**UNITED STATES of America,**
**Appellee,**

v.

**Paul R. JONES and Leo B. Mittelman,**
**Appellants.**

**No. 298, Docket 30925.**

United States Court of Appeals
Second Circuit.

Argued Feb. 8, 1967.

Decided March 14, 1967.

Daniel R. Murdock, Asst. U. S. Atty., So. Dist. of New York (Robert M. Morgenthau, U. S. Atty., Michael W. Mitchell, Asst. U. S. Atty., on the brief), for appellee.

H. Elliot Wales, New York City, for appellant Jones.

O. John Rogge, New York City, for appellant Mittelman.

Before MOORE, FRIENDLY and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Paul R. Jones and Leo B. Mittelman were convicted after jury trial, each on one separate count of perjury in the United States District Court for the Southern District of New York, William B. Herlands, Judge, and they appeal. We find no error and affirm the judgments.

In 1960 Mittelman was convicted in the Southern District of New York of mail fraud and conspiracy to sell unregistered securities. The conviction was affirmed, United States v. Crosby, et al., 294 F.2d 928 (2d Cir. 1961), cert. denied sub nom. Mittelman v. United States, 368 U.S. 984, 82 S.Ct. 599, 7 L.Ed.2d 523 (1962). On May 15, 1962 Mittelman submitted a motion for a new trial on the ground of newly discovered evidence and government suppression of evidence favorable to the defense. Submitted with the motion were affidavits of Jones executed April 2, 1962 and Mittelman executed May 14, 1962. The convictions for perjury here under review were based on statements in those affidavits to the effect that newly discovered evidence existed in that Jones could testify that the government had knowingly used perjured testimony of witnesses Holland and Carroll and that Jones had not been available to reveal this to Mittelman from the time the government rested until months after the conclusion of the trial.[1]

1. The Indictment in the case at bar contained the following allegations:

1. From on or about the 15th day of February 1960, up to and including the 24th day of May 1960, in the United States District Court for the Southern District of New York, the trial of United States v. Francis Peter Crosby, et al., Docket Number C 157–56, was in progress. LEO B. MITTELMAN was one of the defendants on trial in the above case. The Government finished presenting its evidence and rested its case on or about the 2nd day of May 1960. On or about the 5th day of May 1960, the defense began presenting its evidence in the above case.

2. On or about the 17th day of June 1960, in the United States District Court for the Southern District of New York, a judgment of conviction was entered against LEO B. MITTELMAN for violating Title 18, United States Code, Sections 2 and 1341 (mail fraud), and Title 18, United States Code, Section 371 (conspiracy to sell unregistered securities in violation of Title 15, United States Code, Sections 77e(a) (1), (a) (2) and 77x). By the terms of the said judgment, the said LEO B. MITTELMAN was sentenced to imprisonment for 5 years and to a succeeding 5-year probationary term.

\* \* \* \* \* \*

6. On or about the 15th day of May 1962, the said LEO B. MITTELMAN filed and caused to be filed in the United States District Court for the Southern District of New York a motion for a new trial based, in part, on alleged newly discovered evidence pursuant to Rule 33 of the Federal Rules of Criminal Procedure. It was necessary and material to the said motion that the said LEO B. MITTELMAN show that the alleged newly discovered evidence was in fact newly discovered since the trial and could not have been discovered previously in the exercise of due diligence. In support of the said motion there were submitted the affidavits of PAUL R. JONES dated April 2, 1962, and LEO B. MITTELMAN dated May 15, 1962, among others.

During the course of the trial in United States v. Crosby, witnesses Holland and Carroll had testified on behalf of the government in a manner unfavorable to Mittelman. Jones had been subpoenaed by the government as a possible government witness and had been in contact with Mittelman. The government rested

7. The allegations of paragraphs one through six herein are realleged for each of Counts 1 and 2 as though fully set forth therein.

### COUNT ONE

The Grand Jury charges:

8. On or about the 2nd day of April 1962, in the Southern District of New York, PAUL R. JONES, the defendant herein, having duly taken an oath before a competent tribunal, officer and person, to wit, a notary public, in a case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose and certify truly, and that a written testimony, declaration, deposition and certificate by him subscribed is true, unlawfully, wilfully, knowingly and contrary to such oath did state and subscribe to material matter which he did not believe to be true, more particularly as follows:

"4. * * * I was in New York for many weeks during the trial waiting to testify. At the last moment and just before the government rested its case, I was advised that I would not be used by the government as a witness and it was suggested that I leave town.

"5. The government told me about 5:00 o'clock in the evening that it was not going to use me. That same evening my wife and I packed and we left New York City in my automobile, and we started traveling. The first night we stayed in Maryland; from Maryland we went to Washington, D. C., where we stayed several days. Then we continued our travelling by automobile to North Carolina and from there to Texas. This travelling from New York City to Texas took some three weeks. During this period it would have been impossible for any one other than those whom I telephoned to locate me and needless to say, I did not telephone Mr. Mittelman or any of the other defendants in the instant case."

9. The aforesaid testimony, declaration and deposition of PAUL R. JONES, the defendant herein, as he then and there well knew, was untrue in that he met and conferred with LEO B. MITTELMAN on May 4, 1960, after the Government had rested its case, and remained in New York City until on or after May 6, 1960, at which time the defense was presenting its evidence. (Title 18, United States Code, Section 1621.)

### COUNT TWO

The Grand Jury further charges:

10. On or about the 15th day of May 1962, in the Southern District of New York, LEO B. MITTELMAN, the defendant herein, having duly taken an oath before a competent tribunal, officer and person, to wit, a notary public, in a case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose and certify truly, and that a written testimony declaration, deposition and certificate by him subscribed is true, unlawfully, wilfully, knowingly and contrary to such oath did state and subscribe to material matter which he did not believe to be true, more particularly as follows:

"52. *The Jones affidavit.* I knew Paul R. Jones before the trial. I had met him in the summer of 1955, and I had last seen him in Birmingham on or about August 11, 1955 when I delivered 500,000 shares of Homestead stock to him which he had stated he could sell. I met him again on several occasions during the trial, to which he had been subpoenaed as a witness. I discussed the case with him in a general way, and he told me that he was under instructions to report to the prosecutors at 4:30 P.M. at the end of each court session. He also told me that he expected to be called as a government witness, and that if he was not called and was released from the subpoena no one would be able to locate him. I confess that I could not decide whether to subpoena him or not. I did not have his confidence. Before I could make up my mind whether to issue a subpoena, or depend on his being called by the prosecutor, he was suddenly excused just before the defense was to begin, and he was not to be located."

11. The aforesaid testimony, declaration and deposition of LEO B. MITTELMAN, the defendant herein, as he then and there well knew, was untrue in that he met and conferred with PAUL R. JONES on May 4, 1960, after the Government had rested its case, and just before the defense was to begin, and that PAUL R. JONES remained in New York City until on or after May 6, 1960, at which time the defense was presenting its evidence. (Title 18, United States Code, Section 1621.)

its case in chief May 2, 1960 without calling Jones.

The government, in the case at bar, produced evidence that after the government rested, Mittelman, who had been informed by Jones that he could contradict Holland and Carroll as to some of their testimony, arranged a meeting of a number of the defendants and their counsel at the Royalton Hotel on May 4, 1960 at which Jones was present and talked at some length but apparently in a somewhat rambling fashion. Unimpressed by their observation of Jones, and informed of his criminal record, counsel decided not to call him as a defense witness. It is not clear whether Jones had gone to North Carolina when excused by the government May 2, and had come back at Mittelman's call on May 4, or whether he stayed on through May 4 or returned to North Carolina and came back once again after May 4, although it appeared that Mittelman's brother on May 6 cashed a check of Mittelman's for $300 to pay Jones' expenses.

The motion for new trial, and a companion motion for correction of an allegedly illegal sentence were denied. Notices of appeal were filed and the denial of correction of sentence was affirmed, 314 F.2d 654 (2d Cir.), cert. denied 373 U.S. 923, 83 S.Ct. 1523, 10 L.Ed.2d 421 (1963). The appeal from the denial of new trial was abandoned.

On Jones' appeal from the perjury conviction he contends principally that the evidence was insufficient, that it was error to deny his motions for severance, and to deny inspection of Jones' Grand Jury testimony until late in the government's case, and attacks the government's summation as improper and prejudicial. Jones also joins in Mittelman's contentions, which are, in addition to those of Jones, chiefly that it was error to deny earlier production of Mittelman's Grand Jury testimony, that the allegedly perjurious statement was not material to the issue to which the affidavit was addressed and that the indictment should have been dismissed since proof of a

former conviction could not properly be used against him.

Neither Jones nor Mittelman took the stand in this perjury trial. Both, however, had testified before the Grand Jury, and transcripts of the testimony of each were read in evidence, with instructions, however, that it was not to be considered except as to the one whose testimony it was.

### I.

 Both object to the joinder for trial of the two counts of the indictment, one count charging Jones, the other Mittelman. These objections fail for two reasons. The indictment charged the preparation by Jones and Mittelman of false affidavits as to Jones' availability, to be filed with Mittelman's motion. Thus, the joinder of the two counts alleging that the defendants had "participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses" was well within the terms of Fed.R. Crim.P. 8(b). United States v. Cohn, 230 F.Supp. 587 (S.D.N.Y.), mandamus denied sub nom. Application of Gottesman, 332 F.2d 975 (2d Cir. 1964). In the second place, no grounds for relief from prejudicial joinder under Rule 14 were shown. There need be no charge of conspiracy to make actions and declarations of joint actors in furtherance of a common illegal plan admissible against each actor. United States v. Annunziato, 293 F.2d 373, 378 (2d Cir.), cert. denied 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed.2d 134 (1961); St. Clair v. United States, 154 U.S. 134, 149, 14 S.Ct. 1002, 38 L.Ed. 936 (1894); United States v. Pugliese, 153 F.2d 497, 500 (2d Cir. 1945); People v. Luciano, 277 N.Y. 348, 14 N.E.2d 433 (1938). The evidence admitted against both could therefore have been admitted against either on separate trial and no prejudice from the joinder can be made out. See United States v. Granello, 365 F.2d 990, 995 (2d Cir. 1966).

### II.

 The falsity of the statements of unavailability of Jones after May 2

was clearly proved by the testimony of Steinberg, one of defense counsel in the principal case as to the meeting in the described suite at the Royalton to assess Jones' desirability as a witness, that it was the sole meeting he attended there and that Jones talked at length at the meeting, taken together with the testimony of hotel employees and the plainly admissible hotel records fixing the date as May 4, reinforced by Mittelman's check for Jones' expenses cashed by Mittelman's brother on May 6.[2]

### III.

■ The evidence was clearly sufficient against each appellant to meet the strict requirements [3] of the perjury rule calling for the testimony of two witnesses or the testimony of one witness with corroborating circumstantial evidence. See, e. g. United States v. Marchisio, supra, n. 2; see also United States v. Goldberg, 290 F.2d 729 (2d Cir.), cert. denied 368 U.S. 899, 82 S.Ct. 176, 7 L.Ed. 2d 94 (1961), to the effect that documentary evidence plus the admissions of the accused are sufficient, as in the case at bar.

### IV.

■■ Judge Herlands was concerned over the possibility of prejudice in this trial if it should be revealed to the jury that Mittelman had been convicted in the *Crosby* case. The judge went to extraordinary lengths to attempt to keep knowledge of the conviction from the jury. Now appellants contend that he did not go far enough, for in spite of all precautions the word "prosecutor" crept in, and the claim is that this must have revealed the whole situation to the jury. If this were important, we would be inclined to hold that this was insufficient to place the earlier crime before the jury so that appellants were convicted because of it rather than the evidence of the instant offense. We need not, however, waste much time in speculating how much the jury did, in fact, divine, for the fact of the conviction was relevant and material to show the strong motive the fact provided for the making of the false affidavits, and we will not deprive the trier of this evidence merely because the crime here necessarily bore a close relationship with an earlier crime. The essence of the crime related to the conviction. Reference to another crime is barred only if introduced solely for the purpose of showing that the defendant "committed the crime on trial because he is a man of criminal character." United States v. Bozza, 365 F.2d 206, 213 (2d Cir. 1966). Cf. Spencer v. State of Texas, 385 U.S. 896, 87 S.Ct. 648, 17 L.Ed.2d 606 (January 23, 1967).

### V.

■ Mittelman contends further that even if the statements be found untrue as used, they were not material to the proceeding in which they were used, his application for new trial. Materiality of the statements was correctly held to be an issue for the court, which held them material. United States v. Siegel, 263 F.2d 530, 533 (2d Cir.), cert. denied 359 U.S. 1012, 79 S.Ct. 1147, 3 L. Ed.2d 1035 (1959). The claim that they were erroneously held material must be rejected. Even if, as is now claimed, the main thrust of the motion was not newly discovered evidence that Jones would contradict government witnesses Carroll and Holland, but that Jones would testify that he had informed the government of the claimed falsity of Holland's and Carroll's testimony and the government

2. On appeal from the convictions the evidence is to be viewed in the light most favorable to the government and all permissible inferences are to be drawn in its favor. United States v. Kahaner, 317 F. 2d 459, 467 (2d Cir.), cert. denied 375 U. S. 836, 84 S.Ct. 74, 11 L.Ed.2d 65 (1963); United States v. Hall, 346 F.2d 875 (2d Cir.), cert. denied 382 U.S. 910, 86 S.Ct. 250, 15 L.Ed.2d 161 (1965); United States v. Marchisio, 344 F.2d 653 (2d Cir. 1965).

3. Some authorities maintain that the peculiar rule for perjury cases is too strict. See Report of the President's Commission on Law Enforcement and Administration of Justice, U. S. Government Printing Office 1967, p. 201.

had used it regardless and that Jones had not revealed this to Mittelman until after the trial, the statements would still be material. The court before which the motion was pending would be interested in knowing not only whether Jones had told those details to Mittelman, but whether he was available, whether he talked at all to Mittelman, when and to what extent, so that not only the truth of the statements could be tested, but also Mittelman's diligence in inquiring. Diligence is material on any claim of newly discovered evidence. United States v. Pellegrino, 273 F.2d 570 (2d Cir. 1960); United States v. Costello, 255 F.2d 876, 879 (2d Cir.), cert. denied 357 U.S. 937, 78 S.Ct. 1385, 2 L.Ed.2d 1551 (1958); United States v. Abrams, 357 F.2d 539, 550 (2d Cir.), cert. denied 384 U.S. 1001, 86 S.Ct. 1922, 16 L.Ed.2d 1014 (1966).

## VI.

■ Jones contends that his affidavit was not perjurious because paragraphs 4 and 5 may be taken separately and as referring to two separate dates as to which they were not shown to be untrue. This claim is, however, of no avail, for even if each paragraph, taken separately out of context were true, though relating to different times, if in the natural meaning in the context in which used they were materially untrue, perjury was established. See Meyers v. United States, 84 U.S.App.D.C. 101, 171 F.2d 800, 806–807 (1948), cert. denied 336 U.S. 912, 69 S.Ct. 602, 93 L.Ed. 1076 (1949). And the jury could validly find wilfulness from the manner and context in which they were used. The wording gives no hint that they are not parts of a connected narrative, and since they were prepared and used in connection with Mittelman's affidavit containing the final sentence of paragraph 52 entitled *The Jones Affidavit*, "Before I could make up my mind whether to issue a subpoena, or depend on his being called by the prosecutor, he was suddenly excused just before the defense was to be-

gin, and he was not to be located," the court to which they were addressed, and the jury here were fully justified in interpreting them as representing that Jones had suddenly and unexpectedly become unavailable to Mittelman. The jury in the light of the proof of the Royalton meeting was also entirely justified in finding that the statements were deliberately false.

## VII.

■ We fail to see any prejudice in the admission of the Grand Jury testimony under proper limiting instructions. Mittelman's testimony before the Grand Jury fixing the date of the Royalton meeting as May 4, even if considered by the jury against Jones in violation of the instructions, was merely cumulative to the independent relevant and convincing documentary evidence. Compare United States v. Casalinuovo, 350 F.2d 207, 212 (2d Cir. 1965).

## VIII.

■ Appellants moved pre-trial and during the trial for inspection of their Grand Jury testimony which was refused until late in the presentation of the government's case. We find no prejudicial error in the failure earlier to grant inspection of the Grand Jury testimony. While discovery under Rule 16 (a), F.R.Crim.P., might be granted even in cases such as this pending prior to the amendment to the rule effective July 1, 1966 "so far as just and practicable," grant of discovery was not mandatory. Even if it were, we could find no prejudice to appellants here, for full transcripts were supplied before any portion was offered in evidence, and overnight recess was thereafter granted to enable counsel "to understandably and knowledgeably digest" the transcripts.

We have examined appellants' other contentions and find none which require further discussion.

The judgments of conviction are affirmed.