**UNITED STATES of America, Appellee,**

v.

**Louis Lavin GARDIN, Appellant.**

No. 497, Docket 31192.

United States Court of Appeals Second Circuit.

Argued June 7, 1967.

Decided Aug. 21, 1967.

John R. Wing, Asst. U. S. Atty., Southern Dist. of New York (Robert M. Morgenthau, U. S. Atty., and Andrew M. Lawler, Jr., Asst. U. S. Atty., Southern Dist. of New York, on the brief), for appellee.

Joshua N. Koplovitz, New York City (Anthony F. Marra, New York City, on the brief), for appellant.

Before MOORE, FRIENDLY and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

Louis L. Gardin was found guilty by a jury for knowingly receiving, concealing and facilitating the transportation of illegally imported marihuana in violation of 21 U.S.C. § 176a.[1] A judgment of conviction was entered against him from which he now appeals. We affirm.

The testimony offered by the Government in its case in chief through federal narcotics agents Jensen and Masterson showed in substance that on July 27, 1964 near 106th Street and Amsterdam Avenue in New York City, the appellant, a little after 8:00 p. m., was leaning on the right front fender of an automobile bearing a California license plate. Another individual went up to the appellant and apparently received a key from him and then went to the trunk of the car, opened it and removed a brown paper bag. He then evidently returned the key to the appellant, who got into the car and started to drive off. The agents drove their car in front of the appellant's car and identified themselves. Appellant immediately put his car into reverse and backed rapidly up the street until he collided with a lamp post. The agents pursued on foot and arrested him. The trunk of the car was searched and nine paper bags of marihuana were found.

To prove that the appellant's possession of the marihuana was knowing and intentional, the Government put on the witness stand a third narcotics agent, John Coursey, who testified that on July 17, 1964, while he was posing as a prospective buyer of marihuana and heroin, he had a conversation with the appellant, during which the appellant said that he had already sold all the marihuana he had brought to New York and that he was flying back to California the following evening for a new supply. Coursey testified that appellant also offered to supply him with heroin.

The appellant took the stand in his own defense and sought to rebut the Government's proof of knowledge. He testified that on July 27th he had lent his car to a man named Joe Meyer to pick up a television set. After returning the car, Meyer asked for the key to the trunk to remove the set; instead he removed what appeared to be shopping bags. After Meyer returned the key, the appellant started to drive off; but, when the agents pulled in front of him, he became excited because he was frightened by their guns, and tried to get away. He disclaimed any knowledge of the marihuana in the trunk and denied ever having discussed marihuana with Coursey. He said that they had a conversation about acquiring some heroin but that he had refused Coursey's request to procure it.

The appellant contends that it was error for the trial judge to have admitted, during the Government's case in chief, the testimony of Agent Coursey. It would be a sufficient answer that Coursey's testimony afforded the basis for an inference that Gardin had gone to California to procure the very narcotics with whose transportation he was charged. See United States v. Bozza, 365 F.2d 206, 213–214 (2 Cir. 1966). Moreover, the appellant concedes that the evidence would ordinarily be admissible as probative of his knowledge. United States v. Knohl, 379 F.2d 427, 439 (2 Cir. 1967); United States v. Braverman, 376 F.2d 249, 252 (2 Cir. 1967); United States v. Jones, 374 F.2d 414, 419 (2 Cir. 1967). However, relying on United States v. Byrd, 352 F.2d 570, 574–575 (2 Cir. 1965), the appellant claims that this evidence was not admissible during

---

1. 21 U.S.C. § 176a in pertinent part reads as follows:

"* * * whoever, knowingly, with intent to defraud the United States * * * receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of * * * marihuana after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or whoever conspires to do any of the foregoing acts, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,-000. * * *"

the Government's main case because the appellant had not up to that time contested the issue of knowledge, and that the Government should have been required to defer Coursey's testimony for use on rebuttal, if then warranted. The short answer to this argument is that while the defense had not yet contested the issue of knowledge, the Government is required to prove every essential element of the offense charged beyond a reasonable doubt. It cannot leave one or more of those elements without proof in the hope that the defendant will offer evidence pertaining to them and thereby afford the Government another opportunity to introduce the relevant evidence on rebuttal. See Wigmore, Evidence (3rd ed. 1940) § 348. Otherwise the jury might not be persuaded that the Government had carried its burden as to this element of the crime; indeed, in some cases the defendant might even be entitled to a directed verdict at the close of the Government's main case, for failure of proof.

Nothing in United States v. Byrd, supra, is to the contrary. We did say there that where potential prejudice is substantial and probative value and the Government's need are slight, the better practice would be for the trial judge to exclude the evidence from the Government's case in chief without prejudice to its re-offer on rebuttal, if then warranted. In that case the evidence in question was cumulative to testimony, already given by the same witness on the issues of intent as shown by the circumstances directly involved in two of the offenses charged. To add to this very compelling evidence of intent the same witness' recital of another similar crime, opened the door to prejudice and supplied little or nothing of probative worth, because proof of the element of intent in both of those two counts was bound to turn upon what the triers thought about the witness' credibility. It was also ap-

parent that under the circumstances the Government's need of the other crime evidence was very slight at best. See United States v. Bozza, 365 F.2d 206, 213 (2 Cir. 1966) quoting McCormick, Evidence (1954) § 157 at 332.

■ The determination whether the prejudicial character of other crimes evidence outweighs its probative value in a particular case is committed to the sound discretion of the trial judge. See United States v. Deaton, 381 F.2d 114 (2 Cir. 1967). In the present case the probative value of the evidence was great because it tended to show that the accused dealt in marihuana, that it was likely that he knew that the narcotic was in the car, and that he had possession of it, and also because from it the jury could infer that the marihuana in the car was a part of the supply the accused himself had brought from California. It was necessary for the Government's case in chief because there was little or no other evidence of the appellant's criminal knowledge. The admission of this evidence was by no means an abuse of discretion; on the contrary, it would have been improper to have excluded it.

The appellant further objects to the fact that his trial counsel was not permitted to make his request for Jencks Act [2] material relating to Agent Jensen's testimony outside of the presence of the jury,[3] although he made the request at the trial.

The Court of Appeals for the District of Columbia Circuit, in a divided panel, has held it to be reversible error for the trial judge to direct that Jencks Act material be sought in the presence of the jury. Gregory v. United States, 125 U.S.App.D.C. 140, 369 F.2d 185, 191 (1966); see also Johnson v. United States, 121 U.S.App.D.C. 19, 347 F.2d 803, 806 (1965). The court reasoned that the production of such material in the presence of the jury, followed by a failure to use it in cross-examining the

2. 18 U.S.C. § 3500.

3. After examining (apparently in the presence of the jury) the material produced

by the Government, appellant's counsel asked no further questions of Agent Jensen.

Government's witness, implied to the jury that the witness had made prior consistent statements, which are generally not admissible.[4]

█ While we are not entirely in accord with the conclusion that allowing circumstances to arise at a trial which create the possibility that a jury may draw the inference of a past consistent statement, of itself, constitutes reversible error, we are of the opinion that the fair and just administration of criminal prosecutions might well be better served if the proceeding for the · production of Jencks Act statements or reports were to take place out of the presence of the jury when the defendant requests that this be done.

It is, of course, entirely possible, if not probable, that members of a jury may draw an inference or gain impressions scarcely helpful to a defendant who in their presence has pressed a motion for production of a statement or report made by the witness to the Government and who, after gaining possession of it, examines it with care and then makes no use of it. As this court said in United States v. Annunziato, 293 F.2d 373, 382 (2 Cir.), cert. denied 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed.2d 134 (1961):

> "Had we been defense counsel, we would have bitterly regretted receiving it, [the witness' statement producible under the Jencks Act] since its production would have presented the dilemma, which trial lawyers strive desperately to avoid, that examination on the report would only reinforce the witness' testimony whereas failure to use it would do the same."

The Government on the other hand argues that it is entitled to have the jury know if material, made available under the Jencks Act, is used by the defense,

that it has been provided by the Government. While the possible prejudice to the Government's witness resulting from nondisclosure of the statement's source is somewhat more subtle, there is no very cogent reason against letting it be known.

█ The procedure to be followed should be left to the discretion of the trial judge. While we therefore lay down no hard and fast rule, we do suggest the following which generally may meet the positions of both parties. After the completion of the witness' direct testimony and before cross-examination has been concluded, the defendant will state that he requests leave to make a motion in the absence of the jury; the trial judge will then excuse the jury, and, in its absence, the defendant will move for disclosure of Jencks Act material.[5] Thereafter all steps through the delivery to the defendant of the statement or report, or the portions thereof, to which the defendant is found to be entitled, and including the allowance of a reasonable time to the defendant to examine the material, will take place while the jury is still absent. If, thereafter, the defendant decides to make use of any of the material for cross-examination of the witness, he will be permitted to do so only upon condition that he state preliminarily to the court and jury that he is about to question the witness on the basis of a written statement or report which the Government has made available to the defendant as required by law. This is to negative any inference that the Government had been covering something up and will precede compliance with the general rule of evidence for the protection of the witness which requires the laying of a proper foundation for the introduction of a past contradictory statement.

---

4. In certain limited situations such statements may be admissible to rehabilitate a witness whose credibility has been impeached. See McCormick, Evidence (1954) § 49 at 108–109; Conrad, Modern Trial Evidence (1956) §§ 1155–1156.

5. This will supplement the suggestion made in United States v. Kahn, 366 F.2d 259, 265–266 (2 Cir. 1966). Of course, if no such motion is made, a request for Jencks Act material may be dealt with in or out of the presence of the jury as the trial judge in his discretion may determine.

"Fairness usually does require that the witness shall be told when and where he made the putatively contradictory statement * * *" United States v. Dilliard, 101 F.2d 829, 837 (2 Cir. 1939); see also, Thomas v. United States, 363 F.2d 159 (9 Cir. 1966); McCormick, Evidence (1954) § 37. In effect the procedure herein adopted for the purpose of using Jencks Act material specifically requires, as part of the foundation, the disclosure that the Government was the source of the statement or report being used.

■ In any event, the procedure used in the present case could furnish no ground · for a holding of error because the appellant was in no way prejudiced by it. In his own testimony he did not question the accuracy of Agent Jensen's direct testimony as to what was observed. The appellant in no way contradicted it and only added explanations to make it consistent with his claim of lack of knowledge. Moreover, the trial of this case preceded the suggestion in United States v. Kahn, 366 F.2d 259, 265–266, that the identification of Jencks Act material be done in the absence of the jury.

The appellant also contends that the trial court committed plain error in instructing the jury that if it believed Agent Coursey's testimony it could "infer that this defendant was engaged in the marihuana traffic and was using California as his home base for obtaining his supplies," when, he argues, Coursey's testimony was admissible only on the element of knowledge and intent. But as we have already indicated it is obviously this inference which related so strongly to that element. There was no error in this regard.

The judgment of conviction is affirmed.

MOORE, Circuit Judge (concurring except as herein stated):

I concur in Judge Anderson's opinion except for that portion which suggests a procedure to be followed with respect to Jencks Act statements. The effect of the "suggestion" in my opinion is not offset by the statement that "The procedure to be followed should be left to the discretion of the trial judge." For all practical purposes the "suggestion" is a "direction."

I deem it a mistake for appellate courts to make sweeping procedural suggestions which involve specific fact situations which may arise in the future in various ways and which will call for trial strategy decisions by defense counsel and rulings by the trial judge in the light of then existing circumstances. It is all very well to have whispered side-bar conferences with the court or in the robing room with the jury not present but there are too many current decisions as to what constitutes a "public" trial and what should go on out of the presence of defendant and jury to lay down any such procedural rule as is here suggested.

Furthermore the rather formal procedure suggested wherein defense counsel highlights the statement by some kind of address to court and jury (always subject to danger and possible abuse) will in my judgment merely add to appellate problems in the future. I realize that juries can draw inferences from anything which is heard or observed by them including smirks, grimaces, shrugs, gestures and even *sotto voce* remarks of defendants, their counsel and prosecutors alike but if documents, whether letters, reports or statements called for and not used, are to be made the subject of demand out of the presence of the jury because of appellate speculation as to what a jury might infer therefrom, this bewildered group may well wonder what is going on and how they figure in the "trial by jury" process of dispensing justice. In short, I would leave the determination of such questions to the discretion of the trial judge on a "when, as and if" they arise basis and in the light of the then existing situation before him.