**UNITED STATES of America,**
**Appellee,**

v.

**Samuel A. KAUFER, Appellant.**

**No. 165, Docket 31576.**

United States Court of Appeals
Second Circuit.

Argued Nov. 27, 1967.

Decided Dec. 18, 1967.

Boris Kostelanetz, New York City (Kostelanetz & Ritholz, New York City; Edward J. Daus, New York City, of counsel), for appellant.

John S. Allee, Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, New York City, and Pierre N. Leval, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before MOORE, SMITH and HAYS, Circuit Judges.

MOORE, Circuit Judge.

Appellant, Samuel A. Kaufer, was convicted of bribing an employee of the Internal Revenue Service (the IRS) in vio-

lation of 18 U.S.C. § 201(b). In early 1966, appellant, who was then a Certified Public Accountant, met with Internal Revenue Agent Charles J. Arney, Jr., at appellant's office in New York City to discuss an audit of the 1964 joint income tax return of two of appellant's clients. Agent Arney noted that there was no substantiation for over $16,000 claimed as expenses on that return and appellant agreed to try to locate the missing substantiation. However, no substantiation was furnished and no effort was made to obtain duplicate bills for the expense items involved, and on Friday, July 21, 1966, Arney informed appellant that he would have to propose an additional tax of between $7,000 and $8,000.

Agent Arney testified that at the July 21st meeting, appellant told him that his clients would probably not agree to a deficiency of more than $500. Appellant offered Arney $400 in cash if he would reduce Form 870 (Waiver of Restrictions of Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment) to around $500. Arney told appellant that he would have to consider whether or not to write up the report on that basis and agreed to call appellant if he decided to go along with the proposal.

According to appellant's version of the story, Agent Arney misinterpreted his remarks. He claimed that the $400 was not offered as a bribe, but merely as an offer partially to pay a tax deficiency. Appellant testified that he and Arney were agreed that, except for the unsubstantiated expenses, there was a tax deficiency of $400. Since appellant was anxious to close the case and get away on a vacation, he asked Arney to finish the audit without the missing checks and by writing up Form 870 in an amount not to exceed $500 in tax liability. Appellant explained that the partial payment was to be made in cash because he was not certain that he could get a check, which required two signatures, over the weekend. He had the $400 in cash on his person which he intended to use as vacation money.

Agent Arney immediately reported the "bribe" offer to his superiors. The next day, with an IRS Inspector listening on an extension phone, Arney called appellant and told him that he had decided to go along with the offer. They agreed to meet at 6:30 p. m. on July 25th in the Bronx at the IRT entrance of the Woodlawn-Jerome subway at 161st Street.

On July 25th, with the aid of IRS Inspector George Carros, Agent Arney was equipped with a Fargo radio transmitter which was secreted on his person, and a Minifon recording device which he carried in an attache case. He then met with appellant at the prearranged meeting place. Arney informed appellant that he had reduced the tax deficiency from $7,000 to $497.63. While Arney waited on the street, appellant went into the men's room of a nearby restaurant and counted out the $400. When he returned, he palmed the money and passed it hand-to-hand to Agent Arney. Appellant claims that at that time he asked Arney for a receipt and that Arney stated that he did not have his "receipt book" with him. However, Arney testified that there was no mention of a "receipt," and that he does not have a receipt book.

Appellant was indicted on two counts. Count One charged appellant with giving an employee of the IRS the sum of $400 with intent to influence that employee's official acts in a field audit examination in violation of Title 18 U.S.C. § 201(b). Count Two charged as to the same $400 payment, the lesser included offense of giving a gratuity for, and because of, an official act, in violation of Title 18 U.S.C. § 201(f). The trial court dismissed Count Two on its own motion. The jury found appellant guilty on Count One.

Two recordings were made of the July 25th conversation. A tape recording was made on a Butoba portable tape recorder from a Fargo radio receiver which received the transmission from the Fargo radio transmitter (GX 7). In addition, there was a Minifon recording wire which was made from the Minifon recording device in the attache case (GX 8). Both recordings were offered into evi-

dence by the government and appellant objected to their admission. The government's technical expert, Agent Carros, testified that GX 7 was the better recording and, after listening to that recording, the trial judge admitted it into evidence.

■ Appellant argues that it was error for the trial judge to "suppress" GX 8 and not compel its production for appellant's inspection. At the outset, we note that it was appellant who sought to "suppress" both recordings and was successful in his efforts as to GX 8. The record does not disclose that appellant objected to the judge's ruling that he would admit only one of the recordings or to the judge's method for choosing which recording was to be offered. The record also does not support appellant's claim that he was denied access to GX 8 and thus was denied his right of cross-examination of Agent Arney with respect to the contents of that recording. Appellant was given every opportunity to listen to both recordings. Defense counsel below did not take advantage of the government's offer to let him "sit [there] all afternoon and listen to his heart's content." (Record at page 149.) Agent Arney took the stand the day after GX 7 was admitted into evidence, and although appellant's Counsel below had then had an opportunity to listen to both recordings, he failed to use them in his cross-examination of Arney. Furthermore, after listening to both recordings many times, appellant's counsel here does not now suggest that GX 8 is any more accurate or intelligible than GX 7 which was admitted. After listening to both recordings ourselves, we are convinced that there was nothing exculpatory contained on either recording or that appellant was in any way prejudiced by the admission of GX 7 rather than GX 8.

■■ Appellant also argues that the court below erred in receiving GX 7 into evidence because it was not properly authenticated and because it was inaudible. The same argument was advanced in Todisco v. United States, 298 F.2d 208 (9th Cir. 1961), cert. denied, 368 U.S. 989, 82 S.Ct. 602, 7 L.Ed.2d 527 (1962).

On facts almost identical to the present case, the court noted that all that was necessary was that "the trial judge listen[ed] to the recordings out of the presence of the jury and [that the agent] identify the voices which were heard on the tapes." 298 F.2d at 211. Here both requirements were met. The trial judge listened to GX 7 and found portions of the recording sufficiently audible. We have recently held that this question of degree of audibility is a matter of the trial judge's sound discretion. United States v. Knohl, 379 F.2d 427 (2d Cir.), cert. denied, 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967). Agent Arney testified that he could identify the voices on the recordings as his and appellant's. (Record at pages 31–32.) Furthermore, during the trial defense counsel below, in correcting a statement made by the trial judge, pointed out that appellant did not deny that the recording was of the conversation on July 25th between Agent Arney and the defendant, but only claimed that the recording was so garbled that it could not be understandable. (Record at page 153.)

■ Finally appellant argues that the court below committed error in not accepting certain timely requests to charge. However, it appears that appellant did not submit an actual request to charge. At the close of the trial, appellant did try to submit a portion of his prepared summary which dealt with reasonable doubt and which, the trial judge indicated, would have been out of order in a summation. It was this that the trial judge refused to accept. (Record at pages 279–84.) At that time the judge said that he would charge reasonable doubt and appellant does not now contend that the charge as given was inadequate.

■ The resolution of the credibility of the two conflicting versions of the transaction was exclusively within the jury's province. Their determination can scarcely be said to be based on inadequate evidence. Credulity is indeed strained to believe that partial payment of income taxes due would be made in cash by the accountant for a taxpayer to an agent on

a noisy street corner in the Bronx far from the business offices of taxpayer, accountant or the Internal Revenue Service.

The judgment is affirmed.