UNITED STATES of America,
Appellee,

v.

Kirby FRAZIER and Louis Neville,
Appellants.

Nos. 553, 735, Dockets 72-2210, 72-2408.

United States Court of Appeals,
Second Circuit.

Argued March 30, 1973.

Decided May 17, 1973.

Lumbard, Circuit Judge, filed concurring opinion.

Daniel Isles, Montclair, N. J. (Harvey Weissbard, and Isles & Weissbard, Montclair, N. J., of counsel), for appellant Kirby Frazier.

Barry Turner, Brooklyn, N. Y., for appellant Louis Neville.

Judith A. Metzner, Dept. of Justice, Washington, D. C. (Robert A. Morse, U. S. Atty., Brooklyn, N. Y., and Sidney M. Glazer, Dept. of Justice, Washington, D. C., of counsel), for appellee.

Before FRIENDLY, Chief Judge, LUMBARD, Circuit Judge, and THOMSEN,* District Judge.

FRIENDLY, Chief Judge:

Kirby Frazier and Louis Neville were convicted of knowingly using extortionate means to collect extensions of credit, and conspiring to do so, in violation of 18 U.S.C. § 894, after a jury trial before Jack B. Weinstein, Judge, in the Eastern District of New York. The day after receiving the verdict, the district judge sentenced Frazier to ten years imprisonment and a $10,000 fine, and Neville to five years imprisonment. They assert a variety of errors on appeal, relating to evidentiary rulings by the district judge, his revocation of Frazier's bail during trial, his handling of their request for the Government to turn over certain statements of a witness, the Government's temporary refusal to do so, allegedly improper statements by the Assistant United States Attorney, and, finally, as to Frazier, the procedure followed in his sentencing. Finding no merit in any of these contentions save the last, we affirm appellants' convictions but remand to the district court for resentencing of Frazier in the light of a pre-sentence report.

Appellant Frazier first complains of the district court's refusal to allow him to introduce into evidence a tape recording his counsel had made of a pre-trial interview with two of the alleged extortion victims, except subject to certain conditions. During this interview both women had apparently stated that the loans they had received from Frazier

* Of the United States District Court for the District of Maryland, sitting by designation.

were made out of friendship and were interest-free, and that they had never been threatened by him. At trial they admitted making these statements, but testified that Frazier had asked them to meet with his attorney and told them what to say, and they had done so out of fear. Counsel for Frazier sought to introduce the tape recording to demonstrate that the women had not sounded frightened during their interview.

Judge Weinstein first had the tape played in the absence of the jury. Finding much of it unintelligible, he stated that it would not be admitted unless counsel secured a better tape recorder and prepared a transcript of the recording. On the last day of trial Frazier's counsel brought in better sound reproduction equipment, but not a transcript. Judge Weinstein listened to the tape again in the absence of the jury and still found 75% of it unintelligible. Although he first stated that he could not let it in with this degree of inaudibility, he finally relented to the extent of allowing the tape recording to be played before the jury if accompanied by an explanation by the judge that he considered most of it unintelligible and that counsel had failed to comply with the court's request to prepare a transcript of the recorded conversation. Counsel for Frazier then decided not to use the tape and instead took the witness stand himself to describe the interview.

We see no error in the district court's ruling. This court has held that a trial judge has wide discretion in determining whether to allow a recording to be played before the jury when there is a serious question of its audibility. United States v. Knohl, 379 F.2d 427, 439–441 (2 Cir.), cert. denied, 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967); United States v. Kaufer, 387 F.2d 17, 19 (2 Cir. 1967). There is an obvious danger when a recording is substantially unintelligible that the part that can be heard may leave a misleading impression of the entire conversation. This is particularly true where, as here, the point counsel wanted to make depended on the demeanor of the two women throughout the interview rather than on demonstrating that any particular statement had been made. Moreover, the danger of unreliability of a partly inaudible recording is exacerbated by the substantial impact it may have on the jury. Thus, if, as seems to be agreed, only 25% of the recording involved here was intelligible, the district judge would have been acting well within his discretion if he had stood on his original position and refused to allow the recording to be admitted at all. We therefore see no reason why the court could not impose reasonable conditions upon the recording's admissibility, even if these led appellant's counsel to decide not to use it. Counsel claims that he was unfairly surprised by Judge Weinstein's request for a transcript of the recording on the last day of trial, by which time it was too late to prepare one, and that therefore a statement to the jury that he had not complied with the court's request would have been unreasonable and prejudicial to appellant. However, our reading of the record convinces us that Judge Weinstein made it clear enough from the outset that he wanted to see a transcript of the recorded interview before he would decide whether to allow the tape to be played before the jury.

Appellants also contend that they were prejudiced by the court's handling of their request for the Government to turn over to them, pursuant to the Jencks Act, 18 U.S.C. § 3500, certain pre-trial statements of Selma Harris, allegedly one of the victims of the defendants' extortion, who was called to testify by the defense as a hostile witness. When Harris testified that she had given a statement to an FBI agent, counsel for Frazier sought to approach the bench to request out of the hearing of the jury that the Government produce the statement. The district judge refused to allow this, and counsel was required to ask for production of the statement in open court. When the United States Attorney responded by

asking for what purpose counsel wanted the statement, the court answered "He wants to look at it to see if there is an inconsistency between what she said in the statement and what she said on the witness stand," and directed the Government to produce the statement. After the United States Attorney continued to resist on the ground that the Jencks Act did not apply to pre-trial statements of witnesses called by the defense, a short recess was called and the jury was excused. During this recess counsel for Frazier was given the statement, looked it over, and decided not to use it. No further mention of this statement was made after the jury returned.

■ In United States v. Gardin, 382 F.2d 601, 604–606 (2 Cir. 1967), this court suggested that requests for Jencks Act material should be made and such material turned over out of the presence of the jury. The purpose of this procedure is to prevent the jury from observing defense counsel receive the statement, read it, and then not use it, and thus avoid the implication that the prior statement reinforced the testimony the witness had given on the stand. Even though the statement here was technically not within the coverage of the Jencks Act, we see no reason why the district judge did not allow counsel's request to be made at side-bar and still less for his remark, which would have reinforced the implication the *Gardin* rule seeks to avoid.

■ Nevertheless, *Gardin* does not call for reversal here because the statement was turned over to defense counsel out of the presence of the jury and was never mentioned again. The jury could well have believed that defense counsel had never received the statement. Indeed, this whole episode may have worked to the Government's disadvantage, since the jury could easily have suspected the United States Attorney of hiding from it, as well as from counsel, evidence favorable to the defense. Apart from all this, the case against the defendants was so overwhelming that

any error in this respect would have been harmless beyond a reasonable doubt.

■■ The other contentions relating to the convictions can be dealt with more briefly. Appellant Neville claims that part of the grand jury testimony of Selma Harris tended to exculpate him and that therefore the Government's refusal to turn this over to him before she left the stand violated the rule of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We have the most serious doubt whether this testimony can fairly be called exculpatory but, even if it were, it was turned over to defense counsel on the next day of trial, with ample time for him to recall Harris and make use of it if it were truly helpful. Neville also claims that the court erred in allowing the Government's witnesses, the alleged victims of the extortionate collections of extensions of credit charged in the indictment, to testify about beatings they observed the defendants administer to others in order to collect their loans. This court has often held, however, that such evidence is admissible to show the witness' state of mind. See, *e. g.*, United States v. Zito, 467 F.2d 1401, 1404 (2 Cir. 1972). We see no merit to the other contentions of appellants with respect to their convictions, and therefore these will be affirmed.

■ However, we must remand Frazier's case to the district court because of the procedure employed in sentencing appellants. Over objection of Frazier's counsel, Judge Weinstein sentenced appellants the day after conclusion of the trial, without awaiting the preparation of pre-sentence reports. At the time, he stated that he did not believe in delaying sentencing for the six weeks to two months required to prepare the reports, and that

My practice is therefore to sentence immediately after the trial allowing the Probation Department to proceed with its investigation while the appeal goes forward and then to permit a

motion to resentence, to reduce sentence within 120 days.

For reasons stated in this court's recent opinion in United States v. Manuella, 478 F.2d 440 (2 Cir. 1973), it was erroneous to do this over objection.[1] Frazier's sentence must therefore be vacated and the case remanded for resentence in the light of the pre-sentence report. Since Neville appears to have acquiesced in the procedure followed by the judge and indeed has not raised the point on appeal, his conviction and sentence will be affirmed.

LUMBARD, Circuit Judge (concurring):

I concur, but I think something more needs to be said about when pre-sentence reports are necessary to sentencing. Rule 32 of the Federal Rules of Criminal Procedure takes note that there are circumstances where a pre-sentence report is unnecessary. Thus it provides in paragraph (c) that a pre-sentence report shall be made "unless the court otherwise directs."

Nevertheless, Judge Weinstein should have allowed time for the preparation and consideration of a probation report in a case such as this where he felt that a substantial prison sentence would be necessary, and it was error to proceed forthwith to impose sentence over objection by the defendant Frazier.

At the same time our action here should not be construed as requiring a full-dress report prepared by a probation officer which of necessity seems to entail a delay of six to eight weeks, or more, between the conviction and the imposition of sentence. See United States v. Manuella, 478 F.2d 440, 442, note 3, decided May 2, 1973.

I share Judge Weinstein's concern about the undue elapse of time between conviction and sentence which results almost entirely from the long time it now takes for probation officers in our busy district courts to prepare their careful detailed pre-sentence reports. The sanctions of criminal justice lose much of their force when so much time elapses between conviction and sentence; and altogether too frequently convicted felons are at large after their conviction.

Surely some discussion with counsel can determine those subjects, if any, regarding which the court should be more fully and authoritatively informed before sentence is imposed. The court need not know the family history beyond two generations, or the whereabouts and conduct of the defendant's siblings. Such clearly relevant matters as previous criminal record and previous employment should not require much time to verify. Thus it may be that by agreement necessary information may be ascertained and checked by means agreeable to the defendant and the Government without awaiting the laborious and attenuated report of the overworked probation officers.

If ever there were an example of penny-wise and pound-foolish withholding of public funding for the proper administration of criminal justice, it is the failure to provide adequate funds for enough probation officers. That failure not only has caused undue delays in the sentencing of convicted defendants, but also has on many occasions impelled judges to sentence defendants to jail because they felt that probation supervision would be wholly inadequate. As imprisonment costs the public ten times as much as supervision on probation,[1] the failure to provide enough probation officers is difficult to understand.[2]

---

1. Judge Thomsen and I join in the views expressed in the concurring opinion of Judge Lumbard.

1. The President's Commission on Law Enforcement and Administration of Justice, Task Force Report: Corrections p. 28

(1967); American Bar Association Project on Standards for Criminal Justice, Standards Relating to Probation (Approved Draft, 1970) pp. 29–30.

2. Year after year the Judicial Conference of the United States has called attention

Thus it may well be that in certain cases the sentencing judge would be well advised to take measures to be informed of matters relevant to sentence by means other than an elaborate pre-sentence report which cannot be provided by probation officers until many weeks after conviction. It may be that such a course could have been followed here. However, as the record stands we have no alternative but to require that the court impose sentence only after consideration of a pre-sentence report.

to this need, but with little success. By the time needed personnel is provided the need has increased and the delays are longer because of the increased case loads of the probation officers.