STATE OF CONNECTICUT *v.* JOHN COX, JR.
(2623)

DUPONT, C. J., BORDEN and DALY, Js.

Argued February 5—decision released May 20, 1986

*John R. Williams,* for the appellant (defendant).

*Elpedio N. Vitale,* deputy assistant state's attorney, with whom were *Julia DiCocco Dewey,* assistant state's attorney, and, on the brief, *Arnold Markle,* state's attorney, and *Patrick J. Clifford,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. After a trial to a jury, the defendant was convicted of assault in the second degree, a violation of General Statutes § 53a-60 (a) (2). In his appeal, the defendant claims that the trial court erred (1) by allowing the state to refer to prior statements of prosecution witnesses in the presence of the jury, (2) by restricting the scope of the cross-examination of a

state's witness regarding her bias in favor of the victim of the defendant's attack, (3) by refusing to permit the defendant's presentation of reputation or opinion evidence in order to impeach the credibility of a state's witness, and (4) by instructing the jury that evidence introduced by the state regarding the prior criminal activity of the victim could only be used to impeach his credibility as a witness.

The jury reasonably could have found certain relevant facts based upon the evidence presented. The defendant occasionally visited Bernice Cox, his estranged wife, at her apartment. On one of his sporadic visits, the defendant became angry when he discovered that another man was there. After the man left, the defendant and his wife argued over her relationship with the man. The defendant's son, Jackie Cox, was present in the apartment in another room and could hear the defendant swearing at his mother in a loud voice. Jackie Cox then entered the room and he and the defendant began to argue. The defendant was in possession of a knife which was approximately six to seven inches long. Bernice Cox repeatedly asked him to put the knife away and leave the apartment. Jackie Cox then left the room and returned carrying what was described as a "stick"[1] because he was concerned for his mother's safety. The defendant, while being restrained by his wife, repeatedly threatened to kill his son. After pushing his wife out of his way, the defendant charged at his son and swung at him with the knife, cutting him in the face. At the same time, Jackie Cox swung at the defendant with the stick and both he and the defendant fell to the floor. While they were struggling on the floor, the defendant wounded his son again, this time cutting him on the chest. After being restrained by witnesses to

---

[1] Conflicting evidence was presented regarding the exact nature of the stick. Its description ranged from the size of a small club to one three feet in length.

the incident, the defendant left the apartment. It was later discovered that the defendant's estranged wife, at some point during the struggle, had also received knife wounds.[2] Both victims received medical treatment and the incident was reported to the police.

The defendant's first claim of error is that the trial court erred by requiring the prior statements of the state's witnesses to be referred to and turned over to defense counsel in the presence of the jury. Prior to trial, the defendant moved that the jury be excused at the conclusion of the direct testimony of each prosecution witness in order to allow the production, pursuant to Practice Book § 752,[3] of prior statements by that witness. The trial court denied the motion, stating that it would decide whether there "will be a recess or not" depending upon the length of the statements and whether defense counsel had prior access to them. The trial court, therefore, although denying the motion in limine, deferred action on the substance of it until a state's witness had testified.

During the trial, both Bernice Cox and Jackie Cox testified for the state. At the conclusion of their testimony on direct examination, defense counsel, in the presence of the jury, alluded to the existence of prior statements made by them. These references to statements in possession of the state occurred before the state referred to them. The court explained to the jury that the state was required to give the defense any

---

[2] The defendant was also charged with assault in the second degree involving his estranged wife, and was found not guilty.

[3] Practice Book § 752 provides: "After a witness called by the state has testified on direct examination at trial, the judicial authority shall, on motion of the defendant, order the state to produce any statement of the witness in the possession of the state or its agents, including state and local law enforcement officers, which statement relates to the subject matter about which the witness has testified."

statements which "they may have taken from any particular witness who testified on the stand," and that there would be a recess so that defense counsel could read the statement. The court's explanation was given as to the testimony of Jackie Cox. Obviously, it applied equally to the testimony of Bernice Cox.

Practice Book §§ 753 and 754,[4] which govern the production and delivery of prior statements, do not directly address the issue of whether such statements should be produced in the absence of the jury or whether the existence of such statements may be mentioned in the presence of the jury.

"Our rules of practice governing the disclosure of statements in criminal proceedings substantially track the Jencks Act, 18 U.S.C. § 3500 et seq. That act is looked to by our courts in interpreting our rules governing the disclosure of statements. *State* v. *Hinton,* 196 Conn. 289, 300, 493 A.2d 837 (1985)." *State* v. *Waterman,* 7 Conn. App. 326, 347, 509 A.2d 518 (1986).

It has been stated that the production of such statements outside the presence of the jury serves the purpose of preventing the jury from observing defense counsel receive the statement, read it, and then not use it, thus creating the impression that the prior statement reinforced or was consistent with the testimony of the prosecution witness. See *United States* v. *Frazier,* 479 F.2d 983, 986 (2d Cir. 1973); *Johnson* v.

---

[4] Practice Book § 753 provides in pertinent part: "If the entire contents of a statement requested under Sec. 752 relate to the subject matter of the testimony of the witness, the judicial authority shall order the statement to be delivered directly to the defendant or his counsel for his examination and use."

Practice Book § 754 provides: "Whenever any statement is delivered to a defendant pursuant to Sec. 751, the judicial authority in his discretion, upon application of the defendant, may recess the proceedings for such time as he may determine to be reasonably required for the examination of such statement by the defendant and his preparation for its use in the trial."

*United States,* 347 F.2d 803, 806 (D.C. Cir. 1965). Both federal and state cases have, however, held that the actual procedure to be followed in disclosing prior statements of prosecution witnesses in the possession of the state should be left to the sound discretion of the trial court. *United States* v. *Gardin,* 382 F.2d 601, 605 (2d Cir. 1967); *State* v. *Palmer,* 196 Conn. 157, 164, 491 A.2d 1075 (1985).

In the *Gardin* case, the court formulated a procedural suggestion for the guidance of trial courts. "After the completion of the witness' direct testimony and before cross-examination has been concluded, the defendant will state that he requests leave to make a motion in the absence of the jury; the trial judge will then excuse the jury, and, in its absence, the defendant will move for disclosure of Jencks Act material. Thereafter all steps through the delivery to the defendant of the statement or report, or the portions thereof, to which the defendant is found to be entitled, and including the allowance of a reasonable time to the defendant to examine the material, will take place while the jury is still absent. If, thereafter, the defendant decides to make use of any of the material for cross-examination of the witness, he will be permitted to do so only upon condition that he state preliminarily to the court and jury that he is about to question the witness on the basis of a written statement or report which the Government has made available to the defendant as required by law. This is to negative any inference that the Government had been covering something up and will precede compliance with the general rule of evidence for the protection of the witness which requires the laying of a proper foundation for the introduction of a past contradictory statement." *United States* v. *Gardin,* supra, 605.

Although there is merit to the "prophylactic procedural suggestion" outlined in *United States* v. *Gardin,*

supra; see *State* v. *Palmer,* supra; the facts of this case do not show that the defendant suffered actual harm as a result of the remarks of the state and the court which were made in the presence of the jury. The defendant has failed to demonstrate that he was deprived of his right to a fair trial. He effectively cross-examined the witnesses and had the opportunity to examine the statements outside the presence of the jury. There is no indication here that the state improperly attempted to capitalize on the procedure employed by calling to the jury's attention any failure of the defendant to use any such statement in cross-examination. The mere possibility that a jury may draw an inference of a prior consistent statement does not, of itself, constitute reversible error. *United States* v. *Gardin,* supra; *State* v. *Palmer,* supra, 164.

The defendant's second claim of error is that the trial court erred by limiting the cross-examination of Bernice Cox, the defendant's estranged wife, regarding her bias in favor of the victim of the defendant's assault. During her cross-examination, Bernice Cox stated that she was sympathetic toward her son because of the permanent scar on his face which resulted from his struggle with the defendant. Defense counsel's attempts to probe the witness' sympathy for her son based on his other problems, namely, his prior drug use, were objected to by the state. The trial court sustained the objection on the ground that such an inquiry was irrelevant to the issues of the credibility of the witness and the culpability of the defendant.

The right of an accused effectively to cross-examine an adverse witness is embodied in the confrontation clause of the sixth amendment. *State* v. *Gaynor,* 182 Conn. 501, 508, 438 A.2d 749 (1980); see also *Davis* v. *Alaska,* 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *Douglas* v. *Alabama,* 380 U.S. 415, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965). Cross-examination

regarding motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. *State* v. *Milum,* 197 Conn. 602, 609, 500 A.2d 559 (1985); *State* v. *Privitera,* 1 Conn. App. 709, 711–12, 476 A.2d 605 (1984). The general rule is that restrictions on the scope of cross-examination are within the sound discretion of the trial court, but this discretion comes into play only after the defendant has been permitted cross-examination sufficient to satisfy the sixth amendment. *State* v. *Milum,* supra, 609; *State* v. *Gaynor,* supra, 508; *State* v. *Heinz,* 3 Conn. App. 80, 85–86, 485 A.2d 1321 (1984). "Thus, a claim of undue restriction on cross-examination ordinarily involves a two-pronged analysis: whether the constitutional standard has been met, and, if so, whether the court nonetheless abused its discretion. *State* v. *Gaynor,* supra, 509–10." *State* v. *Heinz,* supra, 86.

An examination of the record in this case indicates that the defendant has failed to satisfy either requirement. First, the cross-examination of Bernice Cox satisfied the requirements of the sixth amendment. Defense counsel was permitted to develop facts from which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability and the bias of the witness, thus satisfying the constitutional standard. *State* v. *Gaynor,* supra, 509; *State* v. *Heinz,* supra, 86. The witness had already testified, without objection by the state, that she was sympathetic toward her son because of the scar on his face. The inquiries regarding her sympathy based upon his past drug use involved the introduction of evidence which was both cumulative and collateral; *State* v. *Gaynor,* supra, 509; and its exclusion did not unduly restrict the defendant's right of cross-examination. The jury heard other testimony regarding the drug problem of Jackie Cox. Second, the defendant has failed to demonstrate that the restrictions imposed were clearly prejudicial,

a requirement in establishing that the trial court abused its discretion. *State* v. *Gaynor*, supra, 510. The purpose of cross-examination as to bias is to test the credibility of the witness and the accuracy and reasonableness of his direct testimony. Id.; *State* v. *Heinz*, supra, 87. Here, the trial court's ruling did not deny the defendant the opportunity to test the witness' credibility or the accuracy of her testimony. We conclude that the defendant's claim that the trial court unduly restricted his right of cross-examination is without merit.

The defendant's third claim of error is that the trial court erred by excluding evidence relating to the reputation in the community as to the truth and veracity of Jackie Cox, offered by the defendant to impeach his credibility. The trial court excluded the evidence on the ground that a proper foundation as to the source of the character witness' knowledge was not demonstrated. With the jury excused, the witness stated that he knew Jackie Cox "from the streets" and from one occasion when Cox talked to him about selling some guns. The witness had no other contact with Jackie Cox. He also stated that he heard "from the streets" that Cox was "a user of drugs" and that "other junkies and whatever" had told him so.

Evidence relating to truth and veracity may be elicited either by inquiry into the witness' knowledge of the subject's general reputation in the community for those particular traits or by the opinion evidence of those who have been shown to have had an opportunity to form, and who have formed, an opinion as to the character of the subject with respect to the trait or traits in issue. See *State* v. *Rodriguez*, 180 Conn. 382, 393, 429 A.2d 919 (1980); *State* v. *Martin*, 170 Conn. 161, 163, 365 A.2d 104 (1976); *State* v. *Gelinas*, 160 Conn. 366, 368, 279 A.2d 552 (1971); *State* v. *Blake*, 157 Conn. 99, 104–105, 249 A.2d 232 (1968). "Whether a witness has had sufficient contact with a person to

be qualified to testify as to a particular character trait is a matter peculiarly within the discretion of the trial court and 'its ruling will be disturbed only in a clear case of abuse or of some error in law.' *State* v. *Rodriguez,* [supra, 389]; *Siladi* v. *McNamara,* 164 Conn. 510, 513, 325 A.2d 277 (1973)." *State* v. *George,* 194 Conn. 361, 368–69, 481 A.2d 1068 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1985). A review of the record clearly reveals the paucity of contacts between the witness and Jackie Cox. The defendant failed to demonstrate that the witness had sufficient knowledge of Cox's general reputation in the community for truth and veracity or that he had an opportunity to form an opinion as to Cox's character for the particular traits in question. We conclude that the trial court did not abuse its discretion in disallowing the evidence for lack of a sufficient foundation. *State* v. *George,* supra, 369.

The defendant's final claim of error is that the trial court erred by instructing the jury that evidence introduced by the state concerning the prior convictions of Jackie Cox could only be used for impeachment purposes. He argues that the evidence, at the time of its introduction, was not limited to use in impeaching credibility, and, therefore, could be used for all purposes, including the defendant's claim of self-defense and the witness' propensity to violate the law.

On his direct examination, Jackie Cox testified, without objection by the defendant, that he had several criminal cases pending against him and a prior conviction for the sale of cocaine. In its charge to the jury, the trial court made reference to the felony convictions of both Cox and the defendant in instructing the jury that such convictions could only be used for impeachment purposes.[5] The defendant argues that the con-

[5] The trial court's charge to the jury on this issue is as follows: "You should consider a witness's interest or lack of interest of whatever sort in the out-

viction for the sale of cocaine, if used for all purposes, would have strengthened his claims that he acted in self-defense, and that Jackie Cox was "high" at the time of the incident.[6] He further argues that the conviction, and the other pending criminal charges, had they not been limited to the impeachment of the credibility of Jackie Cox, would have reinforced his claim that Jackie Cox, rather than he, had broken the law. The defendant does not argue that the state could not have sought and obtained a limiting instruction to the jury as to the use of the testimony.

General Statutes § 52-145 (b) provides that conviction of a crime may be shown for the purpose of attacking the credibility of a witness. The section has been interpreted to apply solely to those convictions the punishment for which exceeds one year. See *State* v. *Braswell,* 194 Conn. 297, 307, 481 A.2d 413 (1984), cert. denied, 469 U.S. 1112, 105 S. Ct. 793, 83 L. Ed. 2d 786 (1985); *State* v. *Roman,* 6 Conn. App. 189, 190–91, 504 A.2d 529 (1986). As a general rule, the trial court has discretion in determining whether a conviction should

come of the trial, his or her ability to observe facts correctly and to remember and relate them truly and accurately. You should test the evidence any witness has given you by your own knowledge of human nature and of the motives which influence and control human action. We have a statute that in this State reads as follows: 'No person shall be disqualified as a witness in any action by reason of his conviction of a crime, but such conviction may be shown for the purpose of affecting his credibility. Credibility as used here means believability. It has been shown that the accused and the witness Jackie Cox have been convicted of a felony in this State. The conviction of another crime by a witness or the accused has been allowed into evidence for the sole purpose of affecting their credibility. You are not to disregard the evidence of the accused or of the witness merely because he was convicted of another crime. You may weigh his testimony and consider it along with the other evidence in this case. It may take into consideration the conviction of the accused or of the witness as bearing upon his credibility, but you should determine that credibility upon the same considerations as those given to any other witness.''

[6] A conviction for the *sale* of cocaine is not necessarily related to the *use* of cocaine or related to violence.

be admitted for purposes of impeachment and its decision may be reversed only if the court abuses that discretion. *State* v. *Braswell,* supra, 307; *State* v. *Nardini,* 187 Conn. 513, 521–22, 447 A.2d 396 (1982).

The question here, however, is not whether Jackie Cox's credibility could be attacked by his prior conviction, but whether evidence of the conviction, not having been explicitly limited by the state for use in credibility impeachment, could be used for all purposes, without limitation. The state, in this case, obviously elicited the prior criminal involvement of Jackie Cox on direct examination, as a trial tactic in order to anticipate potentially damaging impeachment evidence on cross-examination. "Such tactical maneuvering is permissible within the trial court's discretion." Tait & LaPlante, Connecticut Evidence (1985 Sup.) § 7.18, p. 74.

Although the precise issue has not been addressed by Connecticut's Appellate Courts, two Supreme Court cases provide guidance. If a defendant has introduced his prior convictions into evidence, without requesting a limiting instruction, the trial court's failure to give a limiting instruction in its jury charge is not error sufficient to require reversal. *State* v. *Johnson,* 188 Conn. 515, 520–22, 450 A.2d 361 (1982). Implied in this holding is the proposition that, had the defendant in *Johnson* requested a limiting instruction, it would have been error for the court to fail to so instruct the jury. By analogy, had the state in this case sought an instruction limiting the evidence to credibility, it would have been error for the court to deny the request.

If evidence is introduced, without a request to use it for a limited purpose, and without objection, it becomes evidence for whatever it is worth, although the adverse party may later be entitled to an instruc-

tion to the jury regarding its limitation or its inherent infirmity. See *Sears* v. *Curtis,* 147 Conn. 311, 316–17, 160 A.2d 742 (1960).

Under the circumstances of this case, the introduction of the prior conviction of a state's witness by the state on his direct examination, without a request by the state, at the time, to limit the evidence to use in impeaching his credibility and without objection by the defendant, entitled the state to a limiting instruction in the court's charge to the jury. Since the state was entitled to the limiting instruction, it was not error for the court to give the instruction even when the state did not request it.

There is no error.

In this opinion the other judges concurred.