# STATE OF CONNECTICUT *v.* PAUL EGAN
## (4382)
## (4470)

HULL, BORDEN and DALY, Js.

Argued May 9—decision released September 2, 1986

*Martin M. Looney,* with whom, on the brief, was *John A. Keyes,* for the appellant (defendant).

*Karen Picker,* certified legal intern, with whom were *James G. Clark,* deputy assistant state's attorney, and, on the brief, *Gerard Esposito,* assistant state's attorney, for the appellee (state).

HULL, J. In October, 1984, while on probation, the defendant was arrested and charged with assault in the third degree in violation of General Statutes § 53a-61[1] and criminal mischief in the third degree in violation of General Statutes § 53a-117.[2] After a trial to a jury,

---

[1] General Statutes § 53a-61 provides in part: "(a) A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon or a dangerous instrument."

[2] General Statutes § 53a-117 provides in part: "(a) A person is guilty of criminal mischief in the third degree when, having no reasonable ground to believe that he has a right to do so, he: (1) Intentionally or recklessly (A) damages tangible property of another, or (B) tampers with tangible property of another and thereby causes such property to be placed in danger of damage; or (2) damages tangible property of another by negligence involving the use of any potentially harmful or destructive force or substance, such as, but not limited to, fire, explosives, flood, avalanche, collapse of building, poison gas or radioactive material."

the defendant was convicted of both charges. Immediately following his sentencing for assault and criminal mischief, the defendant was put to plea for violation of the conditions of probation. After a hearing, the trial court made a finding that the defendant had violated one of the conditions of his probation. Accordingly, his probation was revoked and a sentence of imprisonment, which had originally been suspended, was imposed. The defendant appealed separately from the judgments of conviction of assault and criminal mischief and of violation of probation. This court ordered the two appeals combined.

The defendant claims that the trial court in his assault and criminal mischief trial erred in five respects: (1) in refusing to admit opinion and reputation evidence to impeach the victim's veracity; (2) in permitting the victim to testify that the defendant told her he was "mob-connected" and that as a result she was afraid for her mother and son; (3) in admitting the victim's hospital records; (4) in denying his motion for judgment of acquittal based on insufficiency of the evidence; and (5) in allowing testimony as to a prior consistent statement to rehabilitate the victim after her credibility was attacked on cross-examination. We find no error in appeal No. 4382.

The defendant also challenges, on several different grounds, his conviction for violation of probation. We conclude that there is error in appeal No. 4470.

I
## Appeal No. 4382

The following facts and testimony are relevant to the defendant's first appeal. On September 19, 1984, during his sentence of probation for prior convictions of disorderly conduct and criminal mischief in the third degree, the defendant met the victim Mary Ellen McGuire at the Ritz restaurant in Huntington. The two,

who did not previously know one another, talked and drank together until around 12:30 a.m., when the restaurant signaled that it was closing. McGuire testified that she left with the defendant because he appeared to be intoxicated and she was concerned that he would not be able to drive home safely. According to McGuire, she drove the defendant home and saw him inside his condominium where, still appearing to be intoxicated, he immediately went to his living room. She then prepared to leave. The defendant, however, became both physically and verbally abusive. He forced McGuire to leave the condominium with him and drive back to the restaurant. During this ride, the defendant accused McGuire of stealing one of his credit cards, threatened her, hit her and finally searched her purse. McGuire testified that the defendant then threw her check book and some of her other belongings out of the car window. After forcing McGuire to drive around for some time, the defendant ordered her to return to his home. While there, the defendant discovered his credit card in his jacket. McGuire testified that the defendant nevertheless continued to threaten her. Eventually, however, he did allow her to leave.

At trial, the defendant agreed that McGuire accompanied him home, but he denied injuring her. According to the defendant, he drove McGuire and himself to his home in his car. When they reached his home, however, the defendant left McGuire alone for a few minutes. When he returned, he saw her counting some money and questioned her as to what she was doing. She responded that his wallet had fallen out of his jacket and that she was merely replacing its spilled contents. The defendant testified that he then counted his money and discovered that approximately $40 to $60 were missing. He accused McGuire of stealing the money but she denied taking it. He persisted in his accusations,

and she maintained her innocence. After threatening to call the police, the defendant drove McGuire back to the restaurant.

The defendant's first claim is that the trial court erred in ruling that two witnesses whom he called to testify as to their opinions of McGuire's veracity and as to her reputation for veracity in the community were not qualified to do so. To lay an appropriate foundation for the introduction of opinion testimony, a party must show that the witness providing the testimony has a " 'deliberate opinion formed as the result of personal contact and experience . . . .' " *State* v. *Privitera,* 1 Conn. App. 709, 713, 476 A.2d 605 (1984), quoting *Richmond* v. *Norwich,* 96 Conn. 582, 594, 115 A. 11 (1921). Similarly, proof of an individual's general reputation in the community for truth and veracity may be elicited only from a witness who has had the opportunity to know, and who does know, of that general reputation. *State* v. *Blake,* 157 Conn. 99, 104, 249 A.2d 232 (1968).

The first witness through whom the defendant sought to introduce reputation and opinion testimony was Laura Lagana, the owner of the Ritz restaurant. Lagana testified that as owner of the restaurant she had met McGuire and had had a "medium amount of conversation with her." The defendant then attempted to elicit Lagana's opinion of McGuire's veracity. The state objected claiming that the defendant had not laid a proper foundation for the testimony. The defendant, therefore, made an offer of proof in the absence of the jury. During the offer of proof, Lagana testified that she believed that McGuire was an untruthful person but admitted that she formed her opinion solely by talking to McGuire in the restaurant. When questioned further, Lagana stated that she could not think of a single occasion when she knew that McGuire had been untruthful. When pressed, Lagana testified to one such

instance. She further testified that she had known McGuire for approximately six months, that she knew her only by talking with her at the restaurant, that she had no other social contact with McGuire, and that she had never spoken to other people about her reputation for truthfulness. When asked if she knew what McGuire's reputation for veracity was in the community, Lagana replied "I don't think so great." Lagana also testified that while she based this conclusion on information provided by people who worked with McGuire, it was not common for McGuire's co-workers to comment to her on McGuire's reputation. On the basis of this testimony, the court ruled there was insufficient foundation for Lagana's testimony.

" 'Whether a witness has had sufficient contact with a person to be qualified to testify as to a particular character trait is a matter particularly within the discretion of the trial court and "its ruling will be disturbed only in a clear case of abuse or some error in law." *State* v. *Rodriguez,* [180 Conn. 382, 389, 429 A.2d 919 (1980)]; *Siladi* v. *McNamara,* 164 Conn. 510, 513, 325 A.2d 277 (1973).' *State* v. *George,* 194 Conn. 361, 368–69, 481 A.2d 1068 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1985)." *State* v. *Cox,* 7 Conn. App. 377, 385–86, 509 A.2d 36 (1986). Here, there is no indication that the trial court abused its discretion. The evidence presented on voir dire showed that Lagana had very little personal contact with McGuire: she had no social contact with her; she had known her only in passing at the restaurant; and she had had only a "medium" amount of conversation with her. Nor did she have sufficient verification of McGuire's truthfulness or lack thereof to form a "deliberate" opinion on the topic. Finally, the defendant did not show that Lagana knew of McGuire's general reputation in a relevant community, or that any *general* reputation about McGuire existed. Rather, Lagana merely stated that

some of the defendant's co-workers felt she "told stories." Based on the limited foundation the defendant provided, it cannot be said that the trial court abused its discretion by concluding that an adequate foundation had not been laid for Lagana's testimony.

The defendant also claims that the trial court erred by refusing to allow Nancy Peterson, one of McGuire's co-workers at Bronson Country Club, to give opinion and reputation testimony concerning McGuire's veracity. As a foundation for the opinion evidence, Peterson testified that she had known McGuire for approximately nine months, that she had worked with her for eight months, that she had occasionally stopped for a drink with McGuire after work, and that she had witnessed McGuire incorrectly indicate the time she was leaving work. After hearing this testimony, the trial court held that Peterson had an insufficient basis on which to form an opinion of McGuire's veracity. The defendant now claims that in so doing, the court erred. We disagree.

While the defendant may be correct in arguing that Peterson had sufficient personal contact with McGuire to form an opinion of her veracity, he is incorrect in implying that Peterson's testimony therefore had to be admitted. To be admissible, an opinion must also be deliberate. *State* v. *Privitera,* supra, 713. An opinion is not deliberate if based on nothing more substantial than unverified beliefs or feelings. Peterson testified that, while she thought that McGuire "told stories," she did not know for sure, and had not attempted to determine, whether McGuire's "stories" were in fact false. The only instance where Peterson was sure that McGuire had been dishonest concerned McGuire's inaccurate reporting of the hours she worked. Given the great deference afforded to the trial court's determination on the admissibility of this type of testimony; *State* v. *Cox,* supra, 386; we cannot conclude that this

fact alone required the court to find a sufficient foundation for Peterson's testimony.

The defendant also asserts that the trial court erred by ruling that Peterson could not testify as to McGuire's reputation for veracity in the community. We reject this claim also. When asked during voir dire whether McGuire had a reputation for being a truthful person, Peterson gave an unequivocal answer. She responded that she "would probably say no." The trial court did not abuse its discretion in ruling that this testimony was insufficient to show that Peterson had an opportunity to know and did know of McGuire's general reputation in the community for truth and veracity.

The defendant's second claim is that the trial court erred by permitting McGuire to testify that he had told her that he was "mob-connected," and that she was, therefore, "afraid for her son and mother." According to the defendant, this testimony was irrelevant and prejudicial and the trial court, therefore, committed reversible error by admitting it over his objections. We disagree with the defendant's assertion that the evidence should not have been introduced.

Evidence is relevant where it renders the existence of a material fact more probable than it would have been without the evidence. *State* v. *Franko,* 199 Conn. 481, 485, 508 A.2d 22 (1986). Here, the challenged testimony related to a material fact: McGuire's credibility. The testimony that the defendant claimed to be "mob-connected" was consistent with McGuire's testimony that the defendant behaved violently. It therefore tended to bolster her testimony and, accordingly, made the possibility that she was testifying truthfully more likely. Similarly, this testimony, together with her testimony that she was afraid for her son and mother, tends to explain why McGuire would be afraid of the defendant and, therefore, offers a possible justification

for why she gave several different versions of the incident. While the credibility of a complaining witness is always an important issue, it was especially so in this case given the paucity of direct evidence other than the testimony of McGuire and the defendant. The trial court did not err in finding that the challenged testimony was relevant.

Because McGuire's testimony was relevant, the only remaining question for the trial court was whether the testimony was, nevertheless, unfairly prejudicial to the defendant. It is the trial court, not this court, that enjoys the primary discretion to make this determination. *State* v. *Aspinall*, 6 Conn. App. 546, 553, 506 A.2d 1063 (1986). Accordingly, the trial court's ruling will be upheld on appeal unless it constitutes an abuse of discretion. Id. Here, the only prejudice which the defendant claims from the admission of the challenged testimony is that the jury may have unfairly inferred that he is a violent individual. While we agree that this type of evidence could have that effect, we note that in terms of its tendency to portray the defendant as violent, the challenged testimony was cumulative of other evidence that was admitted without objection by the defendant. By the time McGuire testified that the defendant claimed to be "mob-connected," she had already testified that he kicked her, swore at her, shouted at her and threatened her. Prior to testifying that she was afraid for her son and mother, McGuire testified that the defendant slapped her, and that he had stated he would just as soon kill her as look at her. Under these circumstances, we conclude that the trial court did not abuse its broad discretion in admitting the challenged testimony.

The defendant's third claim is that the trial court erred by admitting an unedited copy of a hospital record of treatment McGuire received on September 20, 1984. At trial, the state offered the report and the

defendant requested that the statement in the hospital record that McGuire was "assaulted" be deleted. According to the defendant, the statement was inadmissible hearsay. The trial court admitted the report, without making the requested deletion, over the defendant's objection. The defendant now asserts that it erred in so doing. We disagree.

Pursuant to General Statutes § 52-180, business records, although otherwise hearsay, are admissible if certain conditions are satisfied. One such condition is that they must have been made in the regular course of business. *State* v. *Waterman,* 7 Conn. App. 326, 341, 509 A.2d 518 (1986). Under General Statutes § 4-104, hospital records qualify for admission subject to the same conditions. " 'The real business of a hospital is the care and treatment of sick and injured persons. It is not to preserve information for use in litigation. Accordingly, even though it might be the custom of a hospital to include in its records information relating to questions of liability for injuries which had been sustained by its patients, such entries . . . would not be made admissible by the statute unless they also contained information having a bearing on diagnosis or treatment.' *D'Amato* v. *Johnston,* 140 Conn. 54, 61, 97 A.2d 893 [1953]." *Kelly* v. *Sheehan,* 158 Conn. 281, 285, 259 A.2d 605 (1969). "This means that the relevancy of the entry in question to the business of the hospital at the time the entry was made—that is to the care and treatment of the patient [at the time of her admission]—determines its admissibility and is a preliminary question of fact for the trial judge. *D'Amato* v. *Johnston,* supra. His decision must stand unless it is one which he would not reasonably have reached." *Maggi* v. *Mendillo,* 147 Conn. 663, 667, 165 A.2d 603 (1960).

Under the facts of this case, the court could reasonably have concluded that the entry of the statement that the victim was assaulted was relevant to the busi-

ness of the hospital, namely caring for the patient. In coming to a proper diagnosis and plan of treatment, the hospital would certainly be aided by knowing the origin of the injuries. If the injuries were self-inflicted, a different course of treatment might be recommended than that suggested if they were sustained during a fainting spell or as a result of being "assaulted" by another. The trial court did not err in refusing to delete the word.

The defendant also challenges the trial court's denial of his motions for judgment of acquittal, for a new trial, to set aside the verdict and in arrest of judgment. The defendant claims that the state failed to produce sufficient evidence to prove his guilt beyond a reasonable doubt. The defendant does not claim that the state's evidence was insufficient as to any particular element of the crime. Rather, he contends that because McGuire admitted to telling several different versions of the events of the evening in question, her credibility was so undermined that the jury could not reasonably have chosen to accept her testimony concerning those events. This claim merits only minimal discussion.

"It is within the province of the jury to determine the credibility and the effect to be given the evidence. *State* v. *Grant,* 177 Conn. 140, 142, 411 A.2d 917 (1979); *Eager* v. *Barron,* 2 Conn. App. 468, 471, 480 A.2d 576 (1984). The issue to be determined is whether the jury reasonably could have concluded, upon the established facts and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt." *State* v. *Nicoletti,* 8 Conn. App. 351, 354–55, 512 A.2d 235 (1986). We see nothing in this case to indicate that the jury behaved unreasonably by crediting McGuire's version of the events over that provided by the defendant. On the basis of McGuire's testimony that the defendant slapped her, kicked her, threatened her and threw her

check book out of the car, the jury could reasonably have concluded that he caused McGuire physical injury intentionally, recklessly or with criminal negligence in violation of General Statutes § 53a-61 and that he intentionally or recklessly damaged her tangible property in violation of General Statutes § 53a-117. The trial court did not err in denying the motions.

The defendant's final claim is equally without merit. He claims that the trial court should not have allowed the state to introduce a prior consistent statement McGuire made. The defendant concedes that prior consistent statements are admissible to rehabiliate a witness who has been impeached by a prior inconsistent statement. See *State* v. *Brown,* 187 Conn. 602, 607, 447 A.2d 734 (1982). Nor does he argue that McGuire had not been so impeached. Rather, he merely urges this court, without giving a reason, to ignore prior cases which have allowed the introduction of prior consistent statements for this limited purpose. We decline to do so. See *State* v. *Knighton,* 7 Conn. App. 223, 229, 508 A.2d 772 (1986).

## II
### APPEAL NO. 4470

In this appeal, the defendant challenges, on several grounds, the judgment of the trial court revoking a sentence of probation for his conviction of two prior offenses and imposing in lieu thereof a term of imprisonment.[3] We find one of these issues dispositive of this appeal and, accordingly, do not consider the defendant's other claims of error.

On July 19, 1984, the defendant was sentenced to two months imprisonment for a conviction of disorderly conduct, and to one month imprisonment, to be served con-

---

[3] The revocation of postconviction probation is an appealable final judgment. *State* v. *Cooley,* 3 Conn. App. 410, 411 n.1, 488 A.2d 1283, cert. denied, 196 Conn. 805, 492 A.2d 1240 (1985).

secutively, for a conviction of criminal mischief. Execution of both sentences was suspended, and a six month sentence of probation was imposed. It was during this sentence of probation, on September 19–20, 1984, that the defendant committed the acts which formed the basis of the convictions of criminal mischief in the third degree and assault in the third degree which the defendant challenged in appeal No. 4382. On July 30, 1985, immediately following his sentencing for those crimes, and more than six months after his probationary period was to have expired, the defendant was put to plea for violation of one of the conditions of his probation: that he not violate any laws of the United States or of the state of Connecticut. After a hearing on August 13, 1985, the trial court found that this condition had been violated and therefore revoked the defendant's sentence of probation and imposed a two month sentence of imprisonment to be served concurrently with the sentence imposed for the criminal mischief and assault charges.

The defendant claims that the trial court was without power to revoke his probation and to impose a term of imprisonment because the state did not follow the requisite procedure for revocation. In support of this argument, the defendant relies on General Statutes § 53a-32 which provides that to revoke a sentence of probation "[a]t any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant." The defendant claims that he was not personally served with a notice to appear during the period of probation, nor was a warrant issued for his arrest for violation of the

conditions of probation during that time period. He argues, therefore, that the revocation was invalid.

The state concedes that a warrant for violation of probation was not issued during the defendant's period of probation and that the record does not indicate that the defendant was personally served with a notice to appear during that time. The state asserts, however, that in cases where revocation of probation is premised on a conviction for a new offense, Practice Book § 943[4] provides an alternate revocation procedure to that outlined in General Statutes § 53a-32. In such circumstances, revocation can be "initiated by a motion to the court by a probation officer" if "a copy thereof [is] delivered personally to the defendant." Practice Book § 943; see footnote 4, supra. The state claims that this procedure was appropriate in this case because the defendant was before the court pursuant to his convictions for assault and criminal mischief. According to the state, it followed this alternate procedure by filing a probation/conditional discharge proceedings form on October 29, 1984. It argues, therefore, that the trial court did not err in revoking the defendant's sentence of probation.

We do not disagree with the state's conclusion that Practice Book § 943 establishes an alternate procedure for instituting a revocation hearing. A plain reading of this section supports the state's view that the procedure it outlines may, under certain circumstances, be used as a method to initiate revocation proceedings against a probationer. We must, however, reject the state's further claim that the revocation of the defend-

---

[4] Practice Book § 943 provides in part that "[i]n cases where the revocation of probation is based upon a conviction for a new offense and the defendant is before the court or is being held in custody pursuant to that conviction, the revocation proceeding may be initiated by a motion to the court by a probation officer and a copy thereof shall be delivered personally to the defendant."

ant's probation in this case was, therefore, valid. Pursuant to General Statutes § 53a-31 (b), the running of the probationary period is tolled where the revocation is commenced *pursuant to the provisions of General Statutes § 53a-32.* There is, in contrast, no comparable statutory provision which tolls the running of the probationary period where the procedures outlined in Practice Book § 943 are used. Accordingly, where the state chooses to proceed solely under the provisions of § 943, the sentence of probation is not tolled, and the state must, therefore, not only commence the revocation, but also complete it, during the sentence of probation.[5]

Here, it is undisputed that the provisions of General Statutes § 53a-32 were not followed. Accordingly, the running of the sentence of probation was not tolled and it expired on January 19, 1984, almost seven months before the trial court reputedly revoked it. Once a sentence has been fully served, it may not be increased. *State* v. *Heyward,* 152 Conn. 426, 430, 207 A.2d 730 (1965).

There is no error in appeal No. 4382; there is error in appeal No. 4470, the judgment is set aside and the case is remanded with direction to render judgment that the defendant is not guilty.

In this opinion the other judges concurred.

---

[5] Where, however, the revocation is initiated by arrest warrant, the running of the sentence of probation is tolled. *State* v. *Cook,* 183 Conn. 520, 441 A.2d 41 (1981).