## STATE OF CONNECTICUT *v.* CARMELLO PRIVITERA
### (2003)

TESTO, HULL and BORDEN, Js.

Argued January 4—decision released May 15, 1984

*Erskine D. McIntosh,* assistant public defender, for the appellant (defendant).

*Julia D. Dewey,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, *Robert J. Devlin,* assistant state's attorney, and *Michael Stern,* law student intern, for the appellee (state).

BORDEN, J. The defendant was charged in a two count information. The first count charged him with assault on a peace officer, namely officer Robert Beal of the Meriden police department, in violation of General Statutes § 53a-167c (a) (1).[1] The second count charged the defendant with interfering with an officer, namely officer Robert Green of the Meriden police department, in violation of General Statutes § 53a-167a (a).[2] The defendant was acquitted of the assault charge and convicted of the crime of interfering with an officer. He appealed.[3] We find error.

The jury could have reasonably found the following facts supporting the conviction. The defendant was a passenger in his cousin's car on West Main Street in Meriden. The car's muffler was dragging along the ground, causing sparks. Green, who was on patrol, followed the car for several blocks and then pulled it over into the parking lot of a food store. Beal arrived in response to Green's previous backup request. Green learned that the registration to the car had expired. During this process, the defendant had left the car and was jumping up and down and swearing at the officers. The police called for a truck to tow the car. The defendant stood between the tow truck and the car so that the truck could not back up. Beal twice asked him to move and warned him that he would be arrested if he did not do so. The defendant said he would take his time in moving. Beal advised the defendant that he was under arrest and began to escort him to the police

[1] General Statutes § 53a-167c (a) provides in pertinent part: "A person is guilty of assault of a peace officer . . . when, with intent to prevent a reasonably identifiable peace officer . . . as defined in section 53a-3, from performing his duty, (1) he causes physical injury to such peace officer . . . ."

[2] General Statutes § 53a-167a (a) provides in pertinent part: "A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer . . . in the performance of his duties."

[3] This appeal was originally filed in the Appellate Session of the Superior Court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 3 (c).

cruiser. The defendant raked his fingernails down Beal's cheek and a fight ensued between them, which Green joined. After the defendant was subdued, Beal went to the hospital and Green took the defendant to the police station where, still acting violently, he kicked Green as they were entering the building.

The defendant offered evidence of a quite different version. His evidence was to the effect that he was peaceful at the scene; that he did no more than request of Green and Beal that he be permitted to call someone to tow the car; that after he was told the second time to move he turned to do so when he was struck without provocation by one of the officers and jumped by the other; that both of them continued to beat him; and that, as he was being taken, handcuffed, into the police station, he was thrown face first into a wall and kicked Green in self-defense.

I

The defendant first claims error in the ruling of the trial court prohibiting him from cross-examining Beal about possible bias, interest or motive. We agree.

On cross-examination of Beal, the defendant attempted to question him about the pendency of a federal civil law suit filed by the defendant against Beal, Green and a third policeman for a claim arising out of the arrest of the defendant. Beal acknowledged that he had seen the complaint. The basis of the offer was to show bias, interest and motive. The state objected, and the court sustained the state's objection, to which the defendant duly excepted.

"Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. *State* v. *Corley*, 177 Conn. 243, 246, 413 A.2d 826 (1979); *State* v. *Luzzi*, 147 Conn. 40, 46, 156 A.2d 505 (1959). The sixth

amendment to the constitution guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.' This right is secured to defendants in both state and federal prosecutions. *Pointer* v. *Texas,* 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965). The primary interest secured by confrontation is the right to cross-examination. *Douglas* v. *Alabama,* 380 U.S. 415, 418, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965). An important function of cross-examination is the exposure of a witness' motivation in testifying. *Greene* v. *McElroy,* 360 U.S. 474, 496, 79 S. Ct. 1400, 3 L. Ed. 2d 1377 (1959). To comport with the constitutional standards embodied in the confrontation clause the defendant in exercising his right of cross-examination must be allowed to 'expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness.' *Davis* v. *Alaska,* 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974)." *State* v. *Wilson,* 188 Conn. 715, 720, 453 A.2d 765 (1982).

The pendency of civil litigation between a witness and a party against whom he testifies is relevant to bias. 3A Wigmore, Evidence (Chadbourn Rev.) § 949. A police officer who has been sued by the defendant for his conduct in arresting the defendant may be sensitive to a claim of misconduct expressed in that suit and eager to see it rejected. He may be concerned about the imposition of a damages award against him and may harbor animosity toward the defendant for suing him. See *United States* v. *Gambler,* 662 F.2d 834, 837 (D.C. Cir. 1981). Thus, such evidence " 'would reasonably tend to indicate that his testimony might be influenced by interest, bias or a motive to testify falsely.' " *State* v. *Moynahan,* 164 Conn. 560, 601, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973).

The state's arguments that Beal had no financial motive because of the indemnity provision of General Statutes § 7-101a, and that the error, if any, was harmless because the defendant was acquitted of assaulting Beal, are without merit. First, the basis of the claim of bias goes beyond that of a financial motive, the lack of which would more properly be a subject for redirect examination. Second, although the defendant was accused of assaulting Beal, the record plainly indicates that much of Beal's testimony was also relevant to the crime of interfering with an officer, of which the defendant was convicted. The state's evidence in the case was sharply contested by the defendant, and the credibility of both of the officers was equally sharply in issue.

Although this evidentiary ruling is dispositive and will require a new trial, we discuss the defendant's other grounds of appeal because they are likely to arise again.

## II

The defendant claims that the court erred in two other evidentiary rulings. We disagree.

The defendant called Diane Simoneau, who was a witness to a small part of the incident, including the pursuit of the car of the defendant's cousin, the beginning of the argument at the food store and the defendant's being brought into the police station. She was asked to give her opinion as to Green's truth and veracity on the basis of what she saw and heard that evening. The court properly sustained the state's objection since her opinion was based only on her disagreement with Green's version of the facts and not on any prior contact with him. This falls far short of the "deliberate opinion formed as the result of personal contact and experience"; *Richmond* v. *Norwich,* 96 Conn. 582, 594, 115 A. 11 (1921); required as a foundation for an opinion as to a witness' character for truth and veracity.

See *State* v. *Rodriguez,* 180 Conn. 382, 393, 429 A.2d 919 (1980); *State* v. *Gelinas,* 160 Conn. 366, 279 A.2d 552 (1971).

The court also sustained the state's objection to the defendant's attempt to elicit from Simoneau a purported prior inconsistent statement by Green. Simoneau had testified that in the pursuit of the defendant's vehicle before arriving at the food store Green ran a red light. She was then asked to relate the version which she overheard Green give to his police captain at the police station as to whether he had run the light. The court sustained the state's objection. Since there was no showing that Green had been asked in his cross-examination what he told the police captain, and since in any event the excluded statement was collateral, the court did not abuse its discretion in excluding it. See Tait & LaPlante, Handbook of Conn. Evidence (1983 Sup.) § 7.24 (c) and (d).

## III

### A

The defendant's final claim is that the court erred in denying his motion for judgment of acquittal and in its charge to the jury. Insofar as it is relevant to this appeal, the court charged that it is an essential element of the crime of interfering with an officer under General Statutes § 53a-167a (a) that Green was acting in the performance of his lawful duties. The charge stated in essence that a police officer has the duty to enforce the laws and preserve the peace. It further stated that if Green reasonably believed that the defendant, either intentionally or recklessly, engaged in violent, tumultuous or threatening behavior an arrest would be proper,[4] and that if Green was acting to make an arrest on a reasonable belief that such a crime had been com-

---

[4] While not stated in so many words, this was a reference to General Statutes § 53a-181 (a) (1), which defines the crime of breach of peace. There

mitted, the defendant would not be justified in using any physical force against Green to resist the arrest, whether the arrest was later determined to be legal or illegal, because of General Statutes § 53a-23,[5] which the court read to the jury. It also stated that if Green was performing some lawful duty other than trying to make an arrest General Statutes § 53a-23 would not apply.

The defendant claims in effect that it is an essential element of the crime defined by General Statutes § 53a-167a (a) that the police officer was acting legally; that there was evidence that the defendant was arrested not for breach of peace but for interfering with the towing of the vehicle; and that the towing was illegal because under General Statutes § 14-150 (c) the officers, before towing a vehicle without proper registration, were required to affix to it a warning sticker and wait twenty-four hours.[6] Thus, the defendant argues, he was entitled to a judgment of acquittal or, at the least, to a charge on this theory of the case. There was evidence supporting the defendant's theory of the case.

We disagree with the defendant's claim that General Statutes § 53a-167a (a) requires proof by the state that the police officer was acting legally. Our disagreement, however, requires us to consider intertwined issues concerning the scope of § 53a-167a (a) and its relationship to General Statutes § 53a-23 which have not been previ-

had been a bill of particulars filed by the state indicating this as one of the statutory bases relied on by the state.

[5] General Statutes § 53a-23 provides as follows: "A person is not justified in using physical force to resist an arrest by a reasonably identifiable peace officer, whether such arrest is legal or illegal."

[6] The state's argument that the vehicle's dragging muffler made it a menace to traffic and thus subject to immediate towing under General Statutes § 14-150 (b) is misplaced because there was no indication that that was a basis for the officers' action and the court did not charge the jury on that theory of the state's case.

ously decided. Those issues are whether it is an essential element of the crime of interfering with an officer under § 53a-167a (a) that the peace officer was acting legally, and whether, when the basis of the interfering charge is that the defendant physically resisted an arrest, the legality of that arrest is immaterial. Our resolution of those issues leads us to conclude that the court erred in its charge to the jury, but for reasons quite different from those advanced by the defendant.

### B

General Statutes § 53a-167a (a) provides that a "person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties." This statute entered our law as part of the penal code, effective October 1, 1971. Public Acts 1969, No. 828. It may be seen as supplanting the prior General Statutes (Rev. to 1968) § 53-165, which was aimed at "[a]ny person who obstructs, resists or abuses any officer concerned in the administration of justice while in the execution of his office . . . ."

Prior to the penal code, General Statutes § 53-165 had been interpreted to require proof that the officer was acting legally in order for him to be " 'concerned in the administration of justice while in the execution of his office.' " *State* v. *Cesero,* 146 Conn. 375, 379, 151 A.2d 338 (1959). Thus, if he was executing a stale search warrant he was not acting legally. Id. It was also interpreted to require, when the evidence indicated physical resistance to an arrest, proof that the arrest was legal. *State* v. *Amara,* 152 Conn. 296, 300, 206 A.2d 438 (1964). Thus, physical resistance to an illegal arrest was a valid defense to prosecution under the statute. Id.

After the enactment of the penal code, the first case to construe General Statutes § 53a-167a (a), in the con-

text at issue here, was *State* v. *Anonymous (1977-5)*, 34 Conn. Sup. 531, 375 A.2d 417 (1977). On facts involving the defendant's forceable resistance to a warrantless entry by the police into her home, the Appellate Session of the Superior Court, relying on *State* v. *Cesero,* supra, stated that "an officer cannot be found to have been in the performance of his duties unless he was acting within the law at the time of the alleged interference." Id., 546. Since entry into the defendant's home, in order to arrest a visitor there, was the duty the officers claimed to be performing, and since it was the legality of that entry which was at issue, and not the legality of the arrest, the court held that General Statutes § 53a-23 was immaterial to the case. Id., 547. Although its language requiring proof of legality for proof of performance of duty was broad, *State* v. *Anonymous (1977-5),* supra, was later confined by the Appellate Session to the issue of a forceable entry into a dwelling, and the language of General Statutes § 53a-167a (a) was not deemed to require specific proof that the officer was acting legally. *State* v. *Dougherty,* 38 Conn. Sup. 400, 402, 450 A.2d 870 (1982) (the words "in the performance of his duties" are used in their nontechnical and commonly accepted meaning).

Another section of the same penal code which included General Statutes § 53a-167a (a) was General Statutes § 53a-23, which eliminated the right to resist an illegal arrest. See footnote 5, supra. The official comment of the commission to revise the criminal statutes,[7] which drafted the penal code, states that General Statutes § 53a-23 "intends to change the common law rule, as stated in State v. Amara, 206 A.2d 438, 152 Conn. 296 (1964), regarding the right to use force to resist

---

[7] The commission's comments have been used as an authoritative guide by our Supreme Court. See, e.g., *State* v. *Belton,* 190 Conn. 496, 500–501 n.4, 461 A.2d 973 (1983); *State* v. *Jonas,* 169 Conn. 566, 575–76, 363 A.2d 1378 (1975), cert. denied, 424 U.S. 923, 96 S. Ct. 1132, 47 L. Ed. 2d 331 (1976).

an illegal arrest." Commission to Revise the Criminal Statutes, Penal Code Comments, Connecticut General Statutes Annotated § 53a-23. Thereafter the Supreme Court, although finding it inapplicable to a prosecution under the prior General Statutes (Rev. to 1968) § 53-165 because of nonretroactivity, stated that General Statutes § 53a-23 "can only be read as abrogating the common-law rule, established in this state in cases such as *State* v. *Amara,* 152 Conn. 296, 299, 206 A.2d 438 [1964], and *State* v. *Engle,* 115 Conn. 638, 648, 162 A. 922 [1932], that a person may resist an illegal arrest." *State* v. *Concaugh,* 170 Conn. 95, 99, 365 A.2d 395 (1976). This reading was recently reaffirmed by the Supreme Court in the context of a prosecution for interfering with an officer under General Statutes § 53a-167a (a), although the court held General Statutes § 53a-23 inapplicable to physical resistance to an unlawful entry into the home. *State* v. *Gallagher,* 191 Conn. 433, 441, 465 A.2d 323 (1983).

*State* v. *Gallagher,* supra, is far from conclusive on the issues here, however, and emits ambiguous signals as to whether General Statutes § 53a-23 negates the illegality of an arrest as a defense to prosecution under General Statutes § 53a-167a (a). Much of the reasoning of that decision acknowledges the wisdom and widespread acceptance of the policy behind General Statutes § 53a-23; id., 441–42; yet two of its footnotes can be read as looking in another direction; namely that General Statutes § 53a-23 would be a defense to an assault charge but not to an interfering charge. See id., 442 n.6 and 443–44 n.7. Footnote 7, however, criticizes Justice Shea's concurring line of reasoning "because it relies directly on a case, *State* v. *Cesero,* 146 Conn. 375, 151 A.2d 338 (1959), which antedates General Statutes § 53a-167a."

## C

Thus, there is no authoritative statement in our cases defining the relationship between General Statutes §§ 53a-23 and 53a-167a (a) where the defendant offers physical force to resist an arrest and when his conduct does not involve resistance to an unlawful entry into his home. We conclude that General Statutes §§ 53a-23 and 53a-167a (a) must be read together. We hold that the legality of the police officer's conduct is not an element of the crime defined by General Statutes § 53a-167a (a), and that, in a prosecution under that statute, to the extent that the state's case is based on the conduct of a police officer in making an arrest, by virtue of General Statutes § 53a-23 the illegality of that arrest is not a defense.

First, as both the official commentary to the penal code and the Supreme Court have recognized, General Statutes § 53a-23 was intended to abrogate the rule stated in *State* v. *Amara,* supra, that there is a right to resist an illegal arrest. *State* v. *Gallagher,* supra; *State* v. *Concaugh,* supra. *State* v. *Amara,* supra, was a prosecution for resisting an officer under General Statutes (Rev. to 1968) § 53-165, the statutory predecessor of General Statutes § 53a-167a (a). The issue in the case was whether the illegality of the arrest was a defense to the charge; it was not whether such illegality was a defense to a charge of assault. The statutory abrogation of that rule points emphatically in the direction that such illegality is not a defense to the offense which replaced General Statutes (Rev. to 1968) § 53-165.

Second, the policy reasons behind General Statutes § 53a-23 apply more to the factual situations contemplated by General Statutes § 53a-167a (a) than they do to those situations contemplated by other criminal stat-

utes. Those reasons were articulated as follows: "The rationale for this change is that the question of whether an arrest is legal or illegal (*i.e.* whether there is probable cause therefor) is usually a very difficult factual question; that the prior rule invites violence; and that it is better social policy to require the arrestee to submit and challenge the arrest in court, rather than to permit him to use force at the place of arrest subject to a later judicial determination of the legality of the arrest." Commission to Revise the Criminal Statutes, Penal Code Comments, Connecticut General Statutes Annotated § 53a-23. The Supreme Court has supplemented those reasons as follows: "(a) the development of modern remedies to unlawful arrests such as bail and the exclusionary rule renders the right to resist anachronistic; and (b) the fact that peace officers nowadays are typically armed with lethal weapons renders resistance intolerably dangerous, especially to the arrestee." *State* v. *Gallagher,* supra, 442. An additional reason is the availability of civil remedies for false imprisonment; see Wright & Fitzgerald, Conn. Law of Torts § 12; and for violation of one's civil rights. See 42 U.S.C. § 1983. The dangers sought to be avoided by General Statutes § 53a-23 are precisely those dangers which are likely to be encountered when a police officer attempts to make an arrest and the defendant offers resistance by physical force. Indeed, General Statutes § 53a-167a (a) is the only section of the penal code aimed at resisting a police officer in the performance of his duties, one of which is to make arrests; and General Statutes § 53a-23 is the only section of the penal code dealing with the issue of the right to resist an arrest.

Third, the purpose of General Statutes § 53a-23 is to require nonviolent compliance with the police officer's decision, right or wrong, to arrest; thus avoiding the dangers of violence to arrestor and arrestee,

and postponing to an appropriate forum the often difficult determination of the legality of the arrest. It begs common sense, with which statutes are to be construed; see *Dukes* v. *Durante,* 192 Conn. 207, 471 A.2d 1368 (1984); and bypasses the reality of the street, to say that when a person is subjected to an arrest, *later* determined to be illegal, he cannot assault the officer but can offer physical resistance to the arrest, since ordinarily the exact same conduct will constitute both the assault and the physical resistance. Such an interpretation would strip General Statutes § 53a-23 of any meaningful and intelligible guidance to both arrestor and arrestee, and would vitiate its public policy of peaceful compliance and postponement of the determination of legality.

Fourth, although ordinarily the same course of conduct will form the factual predicate for both an assault and interfering charge, whether the defendant eventually faces either or both is a decision made later by the state's attorney; it is not made by the police, and certainly not on the street. Whether the defendant's conduct, required by the policy of General Statutes § 53a-23, was authorized should not depend on which charges the state later elects to file.[8]

---

[8] We are aware that the New York Penal Law, upon which much of our penal code is based, has been construed to exclude, from a prosecution for resisting arrest, any applicability of its counterpart to General Statutes § 53a-23. See, e.g., *People* v. *Carneglia,* 63 App. Div. 2d 734, 405 N.Y.S.2d 298 (1978). We note, however, that the substantive crime of resisting arrest under the New York Penal Law requires that the arrest be "authorized"; see N.Y. Penal Law § 205.30 (McKinney 1975) which provides much of the justification for that interpretation. See *People* v. *Carneglia,* supra. Furthermore, there is persuasive Connecticut authority for reading our penal code in accordance with its official commentary when that reading conflicts with New York's interpretation of even more similar statutory language. See *State* v. *Jonas,* 169 Conn. 566, 575, 363 A.2d 1378 (1975), cert. denied, 424 U.S. 923, 96 S. Ct. 1132, 47 L. Ed. 331 (1976).

## D

We do not imply by this decision to make irrelevant any degree of police misconduct. We believe that the competing demands expressed by General Statutes §§ 53a-23 and 53a-167a (a) and by the inherent right of persons to be free from arbitrary police conduct require that a balance be struck. General Statutes § 53a-167a (a) has as its purpose " 'to enforce orderly behavior in the important mission of preserving the peace.' " *State* v. *Brown,* 33 Conn. Sup. 515, 518, 356 A.2d 913 (1976). As the trial court charged in this case, a police officer has the duty to enforce the laws and to preserve the peace. Whether he is acting "in the performance of his duty" within the meaning of General Statutes § 53a-167a (a) must be determined in the light of that purpose and duty. If he is acting under a good faith belief that he is carrying out that duty, and if his actions are reasonably designed to that end, he is acting in the performance of his duties. See *United States* v. *Heliczer,* 373 F.2d 241, 245 (2d Cir. 1967). Although from time to time a police officer may have a duty to make an arrest, his duties are not coextensive with his power to arrest. "[His] official duties may cover many functions which have nothing whatever to do with making arrests." Id. The phrase "in the performance of his official duties" means that the police officer "is simply acting within the scope of what [he] is employed to do. The test is whether the [police officer] is acting within that compass or is engaging in a personal frolic of his own." Id.; see also *United States* v. *Martinez,* 465 F.2d 79, 82 (2d Cir. 1972). These are factual questions for the jury to determine on the basis of all the circumstances of the case and under appropriate instructions from the court.

This construction of the relationship between General Statutes §§ 53a-23 and 53-167a (a), and the reason-

ing on which it is based, accords with the clear and unmistakable trend of modern authority. See *United States* v. *Heliczer,* supra; *United States* v. *Martinez,* supra; *United States* v. *Simon,* 409 F.2d 474, 477 (7th Cir. 1969); *State* v. *Hatton,* 116 Ariz. 142, 568 P.2d 1040 (1977); *State* v. *Thomas,* 262 N.W.2d 607 (Iowa 1978); and the numerous authorities cited therein.

In this case there was evidence that the defendant was arrested as he was intentionally interfering with the effort of the police to tow the vehicle; that the police were towing the vehicle because it was departmental policy to do so and because they believed that state law required it; cf. General Statutes § 14-150 (c); and that he physically resisted the arrest both at the scene and at the police station. There was also evidence, however, that the defendant was not interfering with the towing efforts; that as he was turning to leave the area the police attacked him without cause or provocation; and that his actions at the police station were not intended to resist the arrest but to defend himself from another unprovoked injury. Thus, there was ample conflicting evidence on which the jury could have, under appropriate instructions from the court, found the defendant either guilty or not guilty of the interfering charge. Understandably, the trial court's charge to the jury did not embody the principles which we articulate today.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other judges concurred.