## STATE OF CONNECTICUT *v.* DORIAN DAVIS
### (SC 16649)

Sullivan, C. J., and Norcott, Katz, Vertefeuille and Zarella, Js.

Argued April 18—officially released August 27, 2002

*Moira L. Buckley,* deputy assistant public defender, for the appellant (defendant).

*Michael E. O'Hare,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Laura Rose,* assistant state's attorney, for the appellee (state).

*Opinion*

SULLIVAN, C. J. The defendant, Dorian Davis, appeals from the judgment of conviction, rendered after a jury trial, on charges of assaulting a peace officer in violation of General Statutes (Rev. to 1997) § 53a-167c (a),[1] and interfering with a peace officer in violation of General Statutes § 53a-167a (a).[2]

The defendant claims on appeal that the trial court: (1) improperly instructed the jury as to the interrelationship of General Statutes § 53a-23[3] and §§ 53a-167a (a) and 53a-167c (a) and, consequently, relieved the state of its burden of proving beyond a reasonable doubt every element set forth in §§ 53a-167c (a) (1) and 53a-167a (a); (2) improperly denied the defendant's request for a self-defense instruction pursuant to General Statutes § 53a-19;[4] (3) improperly denied his motion claim-

[1] General Statutes (Rev. to 1997) § 53a-167c (a) provides in relevant part: "A person is guilty of assault of a peace officer . . . when, with intent to prevent a reasonably identifiable peace officer . . . from performing his duty, and while such peace officer . . . is acting in the performance of his duties, (1) he causes physical injury to such peace officer . . . ."

[2] General Statutes § 53a-167a (a) provides: "A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties."

[3] General Statutes § 53a-23 provides: "A person is not justified in using physical force to resist an arrest by a reasonably identifiable peace officer, whether such arrest is legal or illegal."

[4] General Statutes § 53a-19 (a) provides in relevant part: "[A] person is justified in using reasonable physical force upon another person to defend himself . . . from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person

ing that the state's use of three peremptory challenges was a pretext for racial discrimination; (4) improperly admitted the state's presentation of rebuttal testimony that the defendant had not been shot by a police officer; and (5) violated the defendant's constitutional guarantee against double jeopardy when it imposed separate sentences for the convictions of assault of a peace officer and interfering with a peace officer because the latter is a lesser included offense of the former. We agree with the defendant's first claim and, accordingly, reverse the judgment of conviction. We also address the second claim, as it is likely to arise in the new trial, and we conclude that the defendant was not entitled to a charge on self-defense on charges of violating §§ 53a-167c and 53a-167a. Because our resolution of these claims disposes of the appeal, we need not address the remaining claims.

The following evidence was presented to the jury. Hartford police officer Richard Rodriguez testified that on December 24, 1997, he was operating his police cruiser when he observed a group of individuals, including the defendant, loitering in front of a grocery store located at the corner of Capen and Martin Streets in Hartford. Rodriguez stopped his vehicle next to the grocery store and requested that the crowd disperse. Several members of the group complied, but others remained congregated in front of the store. The defendant was one of the individuals who had refused to leave the area. When Rodriguez repeated his direction to move along, the defendant shouted profanities, stated that he "owned the block" and continued to ignore Rodriguez' repeated demands to leave. At that point, Rodriguez parked his cruiser, exited from it and directed the defendant to come to him because he was

is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm."

under arrest for disorderly conduct.[5] Rodriguez directed the defendant to place his hands on the cruiser and attempted to frisk him for weapons. The defendant refused to keep his hands on the cruiser, however, but continually attempted to turn around to face Rodriguez. At that point, the defendant and Rodriguez became engaged in a struggle as the defendant tried to turn around and fight and Rodriguez attempted to keep him from turning around.

Rodriguez testified that, at some point, he had radioed for police assistance. Officer William Rivera arrived during Rodriguez' struggle with the defendant. Rivera joined in the attempt to gain control of the defendant so that they could handcuff him. The defendant then grabbed Rodriguez' nightstick and attempted to strike Rivera with it. Rodriguez was able to grab the stick, however, and it ultimately fell to the ground. At that point, Rodriguez heard a gunshot. Rodriguez did not know who had fired the shot.

Believing that Rivera had been shot, Rodriguez threw the defendant to the ground under him and sprayed him with pepper spray. Rodriguez' back and shoulder were injured during the fall to the ground. Rodriguez was also affected by the pepper spray so that he could not continue in his attempt to subdue the defendant. At that point, a number of police officers arrived at the scene and handcuffed the defendant.

Rivera testified that he arrived at the scene in time to observe Rodriguez ordering the crowd to disperse and to hear the defendant swearing at Rodriguez. He

---

[5] General Statutes § 53a-182 (a) provides in relevant part: "A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in . . . tumultuous or threatening behavior; or (2) by offensive or disorderly conduct, annoys or interferes with another person; or (3) makes unreasonable noise; or . . . (6) congregates with other persons in a public place and refuses to comply with a reasonable official request or order to disperse."

also saw that Rodriguez was unable to frisk the defendant because the defendant refused to keep his hands on the cruiser, but kept reaching toward his waist. As Rivera approached the defendant and Rodriguez in order to assist Rodriguez, he saw the defendant remove a silver handgun from the waistband of his pants. Rivera grabbed the gun and punched the defendant in the face. At the same time, the gun discharged. The gun then fell to the ground. It was later recovered as evidence. Rivera's arms and right wrist were injured during the struggle.

The defendant testified that, on the night of December 24, 1997, he was at the corner of Capen and Martin Streets when Rodriguez pulled up in his cruiser and ordered the defendant to "come here." Rodriguez did not direct the defendant to leave the corner and did not tell him that he was under arrest. The defendant complied with Rodriguez' request. He did not swear at Rodriguez or say that he owned the block. As he approached the cruiser, Rodriguez grabbed him and told him to put his hands on the trunk of the cruiser. Rodriguez had a gun and other items in his left hand and asked the defendant whom they belonged to. The defendant told Rodriguez that they were not his, and Rodriguez then struck him in the face and neck. At that point, the defendant tried to flee. He testified that he may have made physical contact with Rodriguez as he attempted to turn around, but he did not hit him. As the defendant attempted to flee, Rivera approached from behind him and both officers threw him to the ground. At the same time, the defendant heard the sound of a gunshot close behind him. While the defendant was on the ground, Rodriguez and Rivera hit him in the legs, arms, and ribs, and sprayed him with Mace. Eventually, they handcuffed him and put him in a cruiser. The police officers sprayed him with Mace again while he was in the cruiser. They then drove him to the police station

and left him alone in the cruiser, where he passed out. Ultimately, the defendant was taken to Hartford Hospital, where he was sedated.

Andrew Brown, an acquaintance of the defendant who witnessed the incident, testified that Rodriguez had not indicated that the individuals at the corner of Capen and Martin Streets were loitering and never told the defendant that he was under arrest. He also testified that the defendant did not swear at the police and that the defendant had complied with Rodriguez' demands. He saw Rodriguez strike the defendant, at which point a scuffle began. During the scuffle, Brown heard a gunshot, but did not see who had the gun. Immediately after the gunshot, Brown heard the defendant scream.

The defendant testified that he was shot in the back of the leg during the struggle with the officers. A bullet was removed from the defendant's leg on August 4, 1999. Robert Hathaway, a firearms and tool mark examiner, testified that the bullet removed from the defendant's leg was fired from the gun that was recovered from the scene of the struggle. In rebuttal, the state presented testimony by hospital personnel that the defendant did not have a gunshot wound when he was taken into custody.

The state charged the defendant with one count of attempt to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1)[6] and 53a-49 (a) (2),[7] two counts of assault of a peace officer in violation

---

[6] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[7] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

of § 53a-167c (a) (1), one count of interfering with a peace officer in violation of § 53a-167a (a), one count of criminal possession of a firearm in violation of General Statutes (Rev. to 1997) § 53a-217 (a),[8] one count of carrying a pistol without a permit in violation of General Statutes (Rev. to 1997) § 29-35,[9] one count of illegal possession of a controlled substance in violation of General Statutes § 21a-279 (c),[10] one count of illegal possession of a controlled substance within 1500 feet of real property comprising a public elementary school in violation of § 21a-279 (d),[11] one count of illegal possession of a narcotic substance in violation of § 21a-279 (a),[12] and one count of illegal possession of a narcotic

[8] General Statutes (Rev. to 1997) § 53a-217 (a) provides in relevant part: "A person is guilty of criminal possession of a firearm or electronic defense weapon when he possesses a firearm or electronic defense weapon and has been convicted of a capital felony . . . ."

[9] General Statutes (Rev. to 1997) § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. . . ."

[10] General Statutes § 21a-279 (c) provides: "Any person who possesses or has under his control any quantity of any controlled substance other than a narcotic substance, or a hallucinogenic substance other than marijuana or who possesses or has under his control less than four ounces of a cannabis-type substance, except as authorized in this chapter, for a first offense, may be fined not more than one thousand dollars or be imprisoned not more than one year, or be both fined and imprisoned; and for a subsequent offense, may be fined not more than three thousand dollars or be imprisoned not more than five years, or be both fined and imprisoned."

[11] General Statutes § 21a-279 (d) provides: "Any person who violates subsection (a), (b) or (c) of this section in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school and who is not enrolled as a student in such school or a licensed child day care center, as defined in section 19a-77, that is identified as a child day care center by a sign posted in a conspicuous place shall be imprisoned for a term of two years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of subsection (a), (b) or (c) of this section."

[12] General Statutes § 21a-279 (a) provides: "Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be

substance within 1500 feet of real property comprising a public elementary school in violation of § 21a-279 (d).

Following a jury trial, the defendant was convicted of two counts of assault on a peace officer in violation of § 53a-167c, and one count of interfering with a peace officer in violation of § 53a-167a, but was acquitted of the remaining charges. On January 20, 2000, the defendant appealed from the judgment of conviction to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

I

We first address the defendant's claim that the trial court's instructions pertaining to § 53a-23 violated his right to due process by relieving the state of its obligation to prove all of the elements of the crimes of assault on a peace officer and interfering with a peace officer in violation of, respectively, §§ 53a-167c (a) (1) and 53a-167a (a). Specifically, the defendant claims that the trial court's instruction pertaining to § 53a-23 misled the jury to believe that the defendant could not resist a peace officer to defend himself, no matter how unlawful the conduct of the police officer was, and that the effect of the instruction was to direct the jury automatically to find intent to interfere with the police officers if it found that the defendant knew or should have known that the police officers were in fact police officers.

The state argues that the defendant's claim is not reviewable because the defendant did not request a charge or except to the instruction given at trial, and that it is not of constitutional dimension. In the event

both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years or be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent offense, may be imprisoned not more than twenty-five years or be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

that we find that it is reviewable, however, the state contends that the trial court properly instructed the jury pertaining to § 53a-23 because the purpose of that section was merely to abolish the common-law privilege allowing a person to resist an unlawful arrest and that it has no effect on the state's burden to prove all of the elements of §§ 53a-167c (a) (1) and 53a-167a (a).

We conclude that the trial court's instructions on § 53a-23 virtually eliminated the state's burden of proving that the police officers were acting in the performance of their duties and had the effect of depriving the defendant of a defense to the charges against him, in violation of his due process rights. Accordingly, we reverse the judgment of the trial court.

As a preliminary matter, we address the reviewability of the defendant's claim. It is well established that "[t]his court is not bound to review claims of error in jury instructions if the party raising the claim neither submitted a written request to charge nor excepted to the charge given by the trial court." (Internal quotation marks omitted.) *State* v. *George B.*, 258 Conn. 779, 801, 785 A.2d 573 (2001). The defendant did not file a written request to charge or explicitly except to the charge given on this issue at trial. He seeks review, however, under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989),[13] or, in the alternative, under the plain error

[13] "In *Golding*, we held that a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. . . .

"The first two requirements involve a determination of whether the claim is reviewable; the second two requirements involve a determination of whether the defendant may prevail. . . . The defendant bears the responsibility for providing a record that is adequate for review of his claim of constitutional error. If the facts revealed by the record are insufficient,

doctrine.[14] We conclude that the record is adequate for review and that the claim is of constitutional magnitude. See *State* v. *Denby*, 235 Conn. 477, 483–84, 668 A.2d 682 (1995) (failure to instruct jury on element of crime violates due process rights); *State* v. *Miller*, 186 Conn. 654, 660, 443 A.2d 906 (1982) (defendant has due process right to present defense). We also conclude that the defendant has established that a constitutional violation clearly exists that clearly deprived him of a fair trial. See *State* v. *Golding*, supra, 239–40.

We begin our analysis with the standard of review. "The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which they might find to be established . . . and therefore, we have stated that a charge must go beyond a bare statement of accurate legal principles to the extent of indicating to the jury the application of those principles to the facts claimed to have been proven. . . .

---

unclear or ambiguous as to whether a constitutional violation has occurred, we will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the defendant's claim. . . . The defendant also bears the responsibility of demonstrating that his claim is indeed a violation of a fundamental constitutional right. Patently nonconstitutional claims that are unpreserved at trial do not warrant special consideration simply because they bear a constitutional label." (Citations omitted; internal quotation marks omitted.) *State* v. *George B.*, supra, 258 Conn. 784–85.

[14] "[T]he plain error doctrine, which is now codified at Practice Book § 60-5, provides in relevant part: The court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law. . . . The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . . Plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Citation omitted; internal quotation marks omitted.) *State* v. *Trotter*, 69 Conn. App. 1, 11–12, 793 A.2d 1172, cert. denied, 260 Conn. 932, 799 A.2d 297 (2002).

"When reviewing the challenged jury instruction, however, we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . [I]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled." (Citations omitted; internal quotation marks omitted.) *State* v. *George B.*, supra, 258 Conn. 797.

"In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Griffin*, 251 Conn. 671, 714, 741 A.2d 913 (1999).

The defendant challenges the following portion of the trial court's instructions to the jury: "Our law does not permit a person to use physical force to resist being arrested by a reasonably identifiable peace officer. There is a General Statute, § 53a-23, that sets out that law. Now, it is necessary that the person being arrested either knew or should have known that the other person was a peace officer. The standard that you are to apply as jurors is whether a reasonable person under the

same circumstances should have identified the other person as a peace officer. In ruling in this standard, such facts as whether the other person wore a uniform, whether he identified himself or showed his badge or other identification or the manner in which he acted and conducted himself are all relevant to your decision of whether that person was reasonably identifiable as a peace officer. If you so find, it is irrelevant whether the peace officer was officially on duty at the time of the attempted arrest, as long as he was identifiable as [a] peace officer. And, lastly the fact that the defendant thought that the attempted arrest was wrongful or that that peace officer was acting unlawfully is no defense to his use of force, which if you find he used force, was unjustified."

The defendant argues that this instruction misled the jury to believe that the defendant could not defend himself from excessive use of force by a police officer, no matter how unlawful or excessive that conduct was. He argues that the instruction implicitly allowed the jury to find the requisite intent to interfere with the police officers without first finding that the police officers had been acting in the performance of their duties. We agree.

This court and the Appellate Court previously have had occasion to consider the interrelationship of § 53a-23, on the one hand, and §§ 53a-167a (a) and 53a-167c (a), on the other hand. In *State* v. *Privitera*, 1 Conn. App. 709, 715, 476 A.2d 605 (1984), the defendant claimed that the trial court improperly had failed to instruct the jury that it is an essential element of the crime defined by § 53a-167a (a) that the police officer be acting legally. The Appellate Court concluded that "the legality of the police officer's conduct is not an element of the crime defined by . . . § 53a-167a (a)," and that "by virtue of . . . § 53a-23 the illegality of that arrest is not a defense" to a charge of violating § 53a-167a (a). Id., 719.

The court also concluded, however, that, to prove a violation of § 53a-167a (a), the state must establish that the police officer was acting " 'in the performance of his official duties . . . .' " Id., 722. "Whether he is acting in the performance of his duty within the meaning of . . . § 53a-167a (a) must be determined in the light of that purpose and duty. If he is acting under a good faith belief that he is carrying out that duty, and if his actions are reasonably designed to that end, he is acting in the performance of his duties. . . . Although from time to time a police officer may have a duty to make an arrest, his duties are not coextensive with his power to arrest. [His] official duties may cover many functions which have nothing whatever to do with making arrests. . . . The phrase in the performance of his official duties means that the police officer is simply acting within the scope of what [he] is employed to do. The test is whether the [police officer] is acting within that compass or is engaging in a personal frolic of his own." (Citations omitted; internal quotation marks omitted.) Id. The court recognized that whether the police officer was acting in the performance of his official duties or engaging in a personal frolic were "factual questions for the jury to determine on the basis of all the circumstances of the case and under appropriate instructions from the court." Id.

The court then noted that there was evidence in that case "that the defendant was not interfering with the [activities of the police officers]; that as he was turning to leave the area the police attacked him without cause or provocation; and that his actions at the police station [where he kicked a police officer who had thrown him face first into a wall] were not intended to resist the arrest but to defend himself from another unprovoked injury." Id., 723. The court concluded that, with this evidence, the jury, if properly instructed, reasonably could have concluded that the police officers were not

acting within the scope of their duties and, therefore, that the defendant was not guilty of violating § 53a-167a (a). Id. Because the jury had not been instructed that the police officers must be acting in the performance of their duties, the judgment of guilty was reversed, and the case was remanded for a new trial. Id.

In *State* v. *Casanova*, 255 Conn. 581, 593–94, 767 A.2d 1189 (2001), this court concluded that the analysis in *Privitera* pertaining to § 53a-167a (a) was equally applicable to § 53a-167c, under which the defendant had been charged, and, therefore, that, under that statute, the state was required to prove beyond a reasonable doubt that the police officers in that case had been acting in the performance of their duties. Accordingly, we concluded that the trial court improperly had excluded evidence supporting the defendant's claim that one of the police officers in that case had been engaged in a personal frolic. Id., 594.

These cases establish that, under § 53a-23, the illegality of an arrest is not a defense to charges under either § 53a-167a or § 53a-167c. This statutory abrogation of the common-law privilege to resist arrest is limited, however, to illegal *arrests*, per se, and has not been applied to other illegal police conduct. As the court in *Privitera* noted, " '[t]he rationale for [§ 53a-23] is that the question of whether an *arrest* is legal or illegal (i.e. whether there is probable cause therefor) is usually a very difficult factual question; that the prior rule invites violence; and that it is better social policy to require the arrestee to submit and challenge the arrest in court, rather than to permit him to use force at the place of arrest subject to a later judicial determination of the legality of the arrest.' " (Emphasis added.) *State* v. *Privitera*, supra, 1 Conn. App. 720, quoting Commission to Revise the Criminal Statutes, Penal Code Comments, Connecticut General Statutes Annotated § 53a-23, commission comment. The court further noted that "[t]he

dangers sought to be avoided by General Statutes § 53a-23 are precisely those dangers which are likely to be encountered when a police officer attempts to make an *arrest* and the defendant offers resistance by physical force." (Emphasis added.) *State* v. *Privitera,* supra, 720. Thus, § 53a-23 was intended to require an arrestee to submit to an *arrest,* even though he believes, and may ultimately establish, that the arrest was without probable cause or was otherwise unlawful. It was not intended to require an arrestee to submit to egregiously unlawful conduct—such as an unprovoked assault—by the police in the course of an arrest, whether the arrest was legal or illegal. See id., 723 (concluding that jury could have acquitted defendant on basis of evidence showing that defendant's actions were intended to defend himself from unprovoked injury by police officer during course of arrest); see also *State* v. *Panella,* 43 Conn. App. 76, 80–81, 682 A.2d 532, cert. denied, 239 Conn. 937, 684 A.2d 710 (1996) (upholding instruction to jury that, in considering charges under §§ 53a-167a and 53a-167c, it must determine whether defendant was defending himself against assault by police officer rather than resisting arrest); *In re Adalberto S.,* 27 Conn. App. 49, 58, 604 A.2d 822, cert. denied, 222 Conn. 903, 606 A.2d 1328 (1992) ("[t]he use of reasonable physical force to defend oneself against an assault by an arresting officer may also be justified"). A fortiori, § 53a-23 was not intended to require the defendant to submit to unlawful police conduct when there has been no attempted arrest.

In this case, the trial court accurately instructed the jury that, under both §§ 53a-167a (a) and 53a-167c (a), in order to convict the defendant, it was required to find that the police officers had been acting in the performance of their duties.[15] It also accurately instructed

[15] With respect to § 53a-167c (a), the trial court instructed the jury that "[f]or you to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt: One, that the victim of

the jury, in the instructions that are challenged by the defendant, that, if the jury determined that a reasonable person should have identified the assaulted persons as police officers, "the fact that the defendant thought that the attempted arrest was wrongful or that that peace officer was acting unlawfully is no defense to [the defendant's] use of force." Although we conclude that these instructions were technically accurate, we agree with the defendant that they were misleading and incomplete.

First, the court's reference to "the fact that the defendant thought that *the attempted arrest* was wrongful" could have misled the jury to believe that it was not required to determine on its own that the police actually had been engaged in an attempted arrest, a factual issue that was disputed by the defendant. (Emphasis added.) Second, the court's instruction "that that peace officer was acting unlawfully is no defense to [the defendant's] use of force" could have misled the jury to believe that, if the police officers at any point had attempted to arrest the defendant, any unlawful conduct by them during the course of the arrest, no matter how egregious, would, as a matter of law, have been within the performance of their duties. This, as we have noted, is not the law. The fact that a person is under arrest does not require that

the assault was a reasonably identifiable peace officer. . . . The second element is that the conduct of the defendant occurred while the peace officer was acting in the performance of his duties; three, that the defendant had the specific intent to prevent the peace officer from performing his lawful duty; and four, that the defendant caused physical injury to the peace officer."

With respect to § 53a-167a (a), the trial court instructed the jury that "[f]or you to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt: One, that the defendant obstructed, resisted, hindered, or endangered a peace officer; two, that the conduct of the defendant occurred while the peace officer was in the performance of his duties; and three, that the defendant intended to obstruct, resist, hinder, or endanger a peace officer while the officer was in the performance of his duties."

person to submit to egregiously unlawful police conduct during the course of the arrest. The defects in the court's instruction on § 53a-23 were further exacerbated by the court's failure to provide a detailed instruction on the meaning of the phrase "in performance of his duties"; see *State* v. *Privitera*, supra, 1 Conn. App. 722; because the jury could have been misled to believe that the mere fact that the defendant knew or should have known that the assaulted persons were police officers meant that, if their conduct was unlawful, no matter how egregious it was, that would not be a defense to charges of assault or interference with a police officer.

Finally, we conclude that the trial court should have instructed the jury that, in determining whether the police officers were acting within the scope of their duties, it should apply General Statutes § 53a-22 (b). That statute provides: "[A] peace officer or authorized official of the Department of Correction or the Board of Parole is justified in using physical force upon another person when and to the extent that he reasonably believes such to be necessary to: (1) Effect an arrest or prevent the escape from custody of a person whom he reasonably believes to have committed an offense, unless he knows that the arrest or custody is unauthorized; or (2) defend himself or a third person from the use or imminent use of physical force while effecting or attempting to effect an arrest or while preventing or attempting to prevent an escape." General Statutes § 53a-22 (b); see also *Moriarty* v. *Lippe*, 162 Conn. 371, 389, 294 A.2d 326 (1972) ("[a] policeman may use no more force than is reasonably necessary to effect an arrest"; " 'unlawful' " defined as being intentional, wanton or negligent conduct in application of force).[16] If

---

[16] The court in *Moriarty* was reviewing a jury instruction on assault charges against a police officer, and not charges of interfering with or assaulting a police officer. It would defy common sense, however, to conclude that a police officer may be charged with assault if his use of force was unlawful, but that a person may not defend himself against the same unlawful use of force without being subject to criminal charges himself.

the police officer does not reasonably believe that his use of physical force is necessary, then his use of force is not within the performance of his duties and a citizen may properly resist that use of force.

The defendant's theory of defense in this case was that (1) there had been no attempted arrest and (2) the force used by the police officers was excessive even if it was assumed that there had been an arrest. Under these circumstances, the trial court's failure to provide detailed instructions on the meaning of the phrase "performance of their duties," and to explain that the use of unwarranted or excessive force is not within the performance of duties for purposes of § 53a-167a or § 53a-167c virtually eliminated that element of those offenses from the jury's consideration, in violation of the defendant's due process rights. See *State* v. *Denby*, supra, 235 Conn. 483–84.

Our determination that the trial court's instructions in this case, although accurate, were misleading also rests in part on our conclusion, more fully discussed in part II of this opinion, that a defendant charged with violating § 53a-167a (a) or § 53a-167c (a) is not entitled to a self-defense instruction. In effect, a detailed instruction that the state must establish that the police officer had been acting in the performance of his duty and that a person is not required to submit to the unlawful use of physical force during the course of an arrest, whether the arrest itself is legal or illegal, stands in lieu of a self-defense instruction in such cases. Consequently, the failure to provide such instructions when the defendant has presented evidence, no matter how weak or incredible, that the police officer was not acting in the performance of his duty, effectively operates to deprive a defendant of his due process right to present a defense. See *State* v. *Harris*, 46 Conn. App. 216, 236, 700 A.2d 1161, cert. denied, 243 Conn. 930, 701 A.2d 662 (1997) ("[A] defendant is entitled to have instructions

presented relating to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible . . . . A fundamental element of due process is the right of a defendant charged with a crime to establish a defense." [Citations omitted; internal quotation marks omitted.]).

We are mindful of the difficult challenge faced by our police officers in making judgment calls as to what constitutes a reasonable and necessary amount of physical force under what may be extremely chaotic, dangerous and even life threatening conditions on the street. We emphasize that the use of physical force against a person by a police officer during the course of an arrest, whether the arrest itself is legal or illegal, may well be within the scope of the officer's duty and entirely justified; see General Statutes § 53a-22 (b); and that resistance to such reasonable and necessary force is not permissible. Under our system, however, whether a police officer reasonably believed that the use of physical force was necessary to effect one of the purposes enumerated in § 53a-22 (b) and, therefore, was within the performance of his duties, is ultimately a factual question to be determined by the jury, taking into account all of the circumstances of the case, including the police officer's need to make rapid decisions, to maintain his authority and control, and to preserve both his own and the general public's safety. If the police officer did not have such a reasonable belief, his use of physical force cannot be said to have been within the performance of his duties. We conclude in this case that the jury was not adequately instructed that it was required to make that determination. Accordingly, we reverse the judgment of the trial court and remand the case to that court for a new trial.

## II

Although our resolution of the first issue disposes of this case, we address the defendant's claim that the

trial court improperly denied his request for a self-defense instruction pursuant to § 53a-19 because this issue is likely to arise in the new trial. The defendant claims that the trial court's refusal to instruct on self-defense relieved the state of its burden of disproving beyond a reasonable doubt that the defendant was justified in using force. In other words, the defendant claims that he presented sufficient evidence that he was defending himself against the officers' excessively forceful acts rather than assaulting or interfering with them for the court to give such an instruction. We conclude that, when a defendant has been charged only with violations of § 53a-167c or § 53a-167a, he is not entitled to an instruction on self-defense. Where there is a possibility of being convicted on other assault charges arising from the same conduct, however, the defendant is entitled to such an instruction.

We previously have recognized that, "[w]hen a defendant admits the commission of the crime charged but seeks to excuse or justify its commission so that legal responsibility for the act is avoided, a theory of defense charge is appropriate. . . . If the defendant asserts a recognized legal defense and the evidence indicates the availability of that defense, such a charge is obligatory and the defendant is entitled, as a matter of law, to a theory of defense instruction. . . . [A] defendant is entitled to have instructions presented relating to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible . . . . A fundamental element of due process is the right of a defendant charged with a crime to establish a defense." (Citations omitted; internal quotation marks omitted.) *State* v. *Harris*, supra, 46 Conn. App. 235–36.

The state argues that the defendant in this case was not entitled to a self-defense instruction because the trial court instructed the jury that the state was required to establish, as an element of both §§ 53a-167a (a) and

53a-167c (a), that the police officers were acting within the course of their duties. Therefore, the state argues that, if the jury determined that the officers had not been acting in the performance of their duties, the defendant could not be found guilty of those offenses, regardless of whether he had been acting in self-defense. If, on the other hand, the officers were found to be acting in the performance of their duties, § 53a-23 would bar the defense of self-defense. Accordingly, the state argues, the defense simply is not available in prosecutions under §§ 53a-167a and 53a-167c.[17]

We agree with the state that, when a defendant is charged only with a violation of § 53a-167a (a) or § 53a-167c (a), logically, there is no call for the defendant to raise the defense of self-defense. Rather, as we concluded in part I of this opinion, the proper defense to those charges in cases in which the defendant claims that the police officer had used unreasonable and unnecessary physical force is that the police officer was not acting in the performance of his duty.[18]

---

[17] The state also points to the Appellate Court's decision in State v. Rigual, 49 Conn. App. 420, 714 A.2d 707 (1998), rev'd on other grounds, 256 Conn. 1, 771 A.2d 939 (2001), in support of its argument that the defendant was not entitled to a self-defense instruction. In that case, the Appellate Court rejected the defendant's claim that the trial court improperly had charged the jury on self-defense by instructing that if the person assaulted was identifiable as a police officer, the defendant had no right to use any force whatsoever in defense of himself. Id., 424. The evidence in that case, however, was not that the police officers had engaged in unreasonable and unnecessary force and, therefore, had not acted in the performance of their duties. Furthermore, there apparently was no dispute that the officers actually were engaged in an attempted arrest. Rather, the evidence suggested only that the defendant may not have known that they were police officers. Under those circumstances, the trial court's instruction that the defendant had no right to use force to defend himself if he knew or should have known that they were police officers was appropriate. When there is evidence that the police were not engaged in the performance of their duties, however, the trial court must give a detailed instruction that that is an element of the offense.

[18] If justified by the evidence, the defendant may also raise the defense that he reasonably did not know that the assaulted person was a police officer.

We note, however, that, there may be cases where, if it is determined that the police officer was not acting in the performance of his duties or that the defendant did not know that the assaulted person was a police officer, and, therefore, the defendant cannot be convicted under § 53a-167c (a) or § 53a-167a (a), the defendant still may be charged with other assault offenses for the same conduct. In such cases, the defendant is entitled to an instruction on self-defense in connection with those charges.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other justices concurred.